RIVERS *v.* BAY CITY TRACTION & ELECTRIC CO.

1. MASTER AND SERVANT—EVIDENCE—COMPETENCY.
Where plaintiff's intestate was killed in a collision between the car of which he was motorman and a train at a railway crossing, at which the brakes of the car failed to operate properly, and it was claimed that he followed a custom rendered necessary by the position and length of a board platform beside the track, in attempting to stop his car, although forbidden by a general rule of the employer, less than 30 feet from the rails, so that his conductor could alight on the walk, evidence was admissible to show that if he had stopped the car 30 feet from the crossing, the rear vestibule of the car would have stood beyond the platform.

2. SAME—OPINION EVIDENCE—EQUIPMENT.
Testimony of an experienced motorman was competent that a brake of the kind with which deceased was supplied to stop his car, would have a tendency to cause slipping of the wheels.

3. SAME—PREVIOUS TROUBLE.
In connection with evidence that at the time of the accident deceased was operating his car in the usual manner and that he tried to check it at the usual place, but the brakes failed to operate efficiently, testimony was competent to show that the brake had given trouble two weeks previously and the cause was due to the construction of the brake.

4. SAME—EXPERT AND OPINION EVIDENCE—WITNESSES—CONCLUSION.
The opinion of the conductor who assisted in running the car at the time deceased was killed, that it would ordinarily be safe to apply the brake 150 feet away from the track, was admissible on the question of contributory negligence.

5. SAME—ASSUMED RISK.
An employé does not assume the risk attending the breach of a statutory duty by his employer, although he may be guilty of contributory negligence which will bar his recovery for the negligence.[1]

[1] As to servant's assumption of master's breach of statutory duty, see notes in 6 L. R. A. (N. S.) 981; 19 L. R. A. (N. S.) 646; 22 L. R. A. (N. S.) 634.

6. SAME—BRAKES.

*Held* that the defendant failed to perform its duty to equip its cars with electric or air brakes as required by Act No. 439, Local Acts 1901, and that the question whether this failure contributed to the death of intestate was a question of fact.

7. TRIAL—ARGUMENT OF COUNSEL.

A judgment will not be reversed for alleged improper argument of counsel for plaintiff which the court corrected upon the objection of defendant's attorney, and which was not shown to have prejudiced defendant's rights.

8. SAME—CHARGE TO JURY—MASTER AND SERVANT.

Instructions to the jury as to the motorman's duty to obey defendant's rules and to use due care, and as to the proximate cause of the accident, *held*, to have been as favorable as defendant could require.

9. SAME—NEGLIGENCE.

Omission to charge the jury that it was decedent's duty to stop the car before going on the track, whatever the length of the board platform might have been, and that the defendant was not negligent in maintaining the walk in the manner it adopted, was not reversible error, in the absence of requests so to instruct the jury.

10. DAMAGES—PRESENT WORTH—NEW TRIAL.

A proper rule for determining the present worth of plaintiff's damages was that the damages should not exceed a sum which, put at five per cent. simple interest for the period determined as the expectancy of decedent, would amount to the damages which they might find plaintiff entitled to; when the charge was illustrated by an example based upon the sum of $1,000, divided by 1.05 for one year, 1.10 for two years, 1.15 for three years, etc.

Error to Bay; Collins, J. Submitted October 6, 1910. (Docket No. 8.) Decided November 11, 1910. Rehearing denied May 8, 1911.

Case by Maude E. Rivers, administratrix of the estate of Henry N. Rivers, deceased, against the Bay City Traction & Electric Company for the negligent killing of her husband. Judgment for plaintiff. Defendant brings error. Affirmed.

*Weadock & Duffy* (*Harry A. La Berge* and *Don B. Sharpe*, of counsel ), for appellant.

*De Vere Hall*, for appellee.

OSTRANDER, J.   Plaintiff's intestate, a motorman employed by the defendant, whose line intersects the roadbed and track of the Detroit & Mackinac Railroad Company at a point between Bay City and Wenona Beach, was killed January 28, 1907, when the car in his charge (No. 14) was struck by an engine of said railroad company which was at the time pulling a passenger train. The defendant's car approaching the intersection aforesaid immediately ahead of and in view of the said passenger train, which was also in view of the motorman, was not stopped until the end of the car was upon the track of the steam road.   The allegation of the duties of the defendant in the premises is:

" (1) To equip said car No. 14 with an electric air brake of the then latest and most approved kind in common use on electric cars, as would effectually control the speed of such car, or such kind as may have been approved by the common council or any board or commission of electric control of said city of Bay City.

" (2) To provide its said car No. 14 with safe and proper brakes and brake equipments.

" (3) Having provided said car No. 14 with safe and proper brakes and brake equipments, to keep and maintain such brakes and brake equipments in a reasonably safe and proper condition of repair.

" (4) To provide and maintain suitable means for the inspection of said car No. 14 and its brakes and brake equipments.

" (5) To keep and maintain said car No. 14 together with the brakes and brake equipments thereon in a reasonably safe and proper condition after notice of defective, insufficient, and improper conditions of same.

" (6) To build, construct, and maintain its said platforms at the intersection of its said line with the rails of said railroad track of sufficient length that when stopped with its rear at the extreme ends of such platforms the front of said car No. 14 would not be in a position dan-

gerously near the said rails and the engines, cars, and trains of cars passing thereon."

A breach of each of said alleged duties is averred. The cars of defendant are operated by electric power. Act No. 439, Local Acts 1901, entitled "An act to regulate the operation of electric cars within the county of Bay," makes it the duty of defendant to equip all double-track cars with an electric or air brake of the latest and most approved kind in common use on electric cars, or with a kind approved by the common council of the city of Bay City, in which defendant was operating. It is stated in the brief for appellee that as enrolled this statute is as above stated, although as printed it requires an electric air brake to be employed. This statute in terms makes a corporation which does not comply with it liable for all damages sustained by any person by reason of such · neglect or refusal. See *Fortin* v. *Electric Co.*, 154 Mich. 316 (117 N. W. 741). It is apparently conceded, though we are not referred to the record for evidence of the fact, that the common council of Bay City declared by resolution that cars should be equipped with brakes as provided by law. Car No. 14 was a double-truck car, 45 feet long, equipped with a hand brake of approved pattern, but with no electric or air brake. There was no derailing switch or other device for the protection of cars at the intersection in question here; and a rule of the defendant company required the motorman to bring his car to a full stop 30 feet from the railroad tracks, and not to proceed until the conductor had gone ahead, and, having looked in both directions on the steam road, signaled the motorman to proceed. The ground was somewhat low, and defendant had provided a board walk at the side of its track 50 feet long, which at its nearest point approached to within 17 feet of the nearest rail of the steam road. About 40 rods east of the crossing, and on defendant's line, is a switch at which car No. 14 was stopped upon the occasion in question.

It is the theory of the defendant that there was no proof of any negligence on its part which caused or contributed to the injury. It is the theory of the plaintiff that for some reason the brakes on this car refused to perform their office, by reason of which the plaintff's intestate was unable to prevent the running of the car into a place of danger. A motion to direct a verdict at the close of the plaintiff's case, and one to direct a verdict at the close of the testimony, were both refused. The cause was submitted to the jury and a substantial verdict was returned for the plaintiff, and upon the verdict a judgment for the plaintiff was entered. Defendant moved for a new trial, and that was refused. Error is assigned upon rulings admitting and rejecting testimony, upon the refusals of the court to direct a verdict for the defendant, upon exceptions taken to the arguments of plaintiff's counsel to the jury, upon refusals to give defendant's requests to charge, upon portions of the charge given, and upon the refusal to grant a new trial, and because the court did not give sufficient reasons for such refusal.

1. **Admission and Rejection of Testimony.** A witness for plaintiff was permitted, over objection, to testify to the length of the board walk which had been referred to and the distance of the farthest end of it from the steam road tracks, and that it was used by the conductor in walking from the rear end of the car to make his required observation on the steam road tracks. Among other questions was the following:

" When the front end was 30 feet from the crossing, where would the rear end of the car be with reference to this sidewalk ? "

The answer was:

" The vestibule—the back vestibule—would be beyond the walk.

"*Q.* Was there any way for the conductor to get out onto this walk in the winter time except through one of the two vestibules ? "

In connection with this testimony, counsel for the plaintiff offered in evidence, and read to the jury, the rule which required all motormen to bring cars to a full stop 30 feet from the railroad track, and not to proceed, etc.   The purpose of this testimony is apparent.   Taken in connection with other testimony introduced for the plaintiff, it tended to prove that if the conductor used the rear vestibule of the car, and could not step from it upon this walk, he would step into or very near a ditch which ran along near the ends of the ties; that it was customary for conductors to use the rear platform for the purpose of alighting, and that it was customary to stop cars at this crossing in such a position that the conductor could alight upon this walk.   The necessary implication, and undoubtedly the conclusion which the jury drew, was that plaintiff's intestate was not, in fact, guilty of a disobedience of the defendant's rules in bringing his car at this crossing nearer than 30 feet to the steam road; that the bringing of the car nearer than 30 feet to the crossing was invited by the length of the walk defendant had constructed and the use which was made of it; and that it was not negligence on the part of the plaintiff's intestate to bring his car to a position where the rear platform of the car would be opposite the plank walk.   Following such a custom, the car would approach to within 21 or 22 feet, or a less distance, of the steam road tracks. It affords a reason for the conduct of plaintiff's intestate in not attempting to bring his car to a stop at a point farther away from the place of danger.   As affecting the question of the plaintiff's contributory negligence, we think the testimony was admissible.   The testimony tends to prove that he followed the usual practice, that he shut off the power at the usual distance from the crossing and applied the brakes, and that, while he might have sooner shut off the power and sooner have applied the brakes and thus have stopped the car in a place of safety, he was doing what had been repeatedly and what was usually done in stopping the car at this point.   There

was the further consideration that, assuming the testimony on the part of the plaintiff to be true, the defendant must have had notice that cars were habitually operated as this testimony indicates they were operated.

A witness for plaintiff was asked, "What is the danger in a car of that character that required so many winds" of the brake chain "in its use, from your experience?" and answered: "Well, as near as I can judge, it would have a tendency to slide the rear wheels." The objection was that the question called for a conclusion. The witness was apparently an experienced motorman, had run car No. 14 at different times, during which he had had occasion to employ the brake, and he had testified without objection to the condition of the car on January 27th from 9:18 a. m. until after 12 o'clock noon, during which time he had it in his charge. He had reported the car out of order with respect to the brakes; and while it is true that the undisputed testimony shows that the car was inspected and repaired during the night of January 27th, and that plaintiff's intestate tried it the next morning when he took it out, and stated that the brakes were working all right, we think it was not reversible error to permit the witness to state the effect upon stopping the car of a brake such as the car was equipped with.

Plaintiff also was permitted, over objection, to introduce testimony tending to show the condition of brakes on this car two weeks before plaintiff's intestate was injured, during the course of a week before his injury, including the manner in which the car operated with the brakes as they then were. He was also permitted to show what happened in the use of a hand brake by which the chain attached to the brake handle is wrapped about the handle or standard if the last wrap should slip off. The evident purpose of this testimony was to show that car No. 14, equipped as it was, had at different times given trouble because of the inefficiency of the brakes, and to show why the hand brake was inefficient under certain conditions and at uncertain times. This testimony must, like some

of that already referred to, be considered in connection with that of the conductor who was on the car of the plaintiff's intestate on the morning of the accident. He testified that the power was shut off at the usual distance from the crossing, that the brake was applied, and that the car checked, and that so far as he observed the motorman was doing what he ought to do and what was usually done to bring the car to a stop in a place of safety. Indeed, he had stepped from the platform of the car upon the step of the car for the purpose of performing his duty when he discovered that the car was in a place of danger. It was the theory of the defendant that, while the brake upon this car was not the statutory brake, it was nevertheless a good brake; that, if it had been used by plaintiff's intestate in a reasonable manner, the car would have been brought to a proper stop. The testimony tended directly to prove one or more of the averments of negligence in the declaration. The same witness, the conductor, was asked:

"*Q.* Coming to shutting off of the power, I understood you to say he shut off his power about 150 feet away from the railroad intersection.

"*A.* Yes, sir; that is my knowledge.

"*Q.* Was that the usual way of doing at that place?

"*A.* Well, that differs a little that way. If he came in on good time and has lots of time he has shut off farther back, and set his brakes up a little and let his car die down, where if he has a little time, he will run up closer to whatever he wants to stop, and then shut off and figure to stop quicker.

"*Q.* What I mean, 150 feet away from the track, would that be a conservative and reasonable distance to shut off the power?

"*Mr. Duffy:* He has already described that; depends on circumstances.

"*The Court:* He may answer."

Defendant excepted, and that exception is the basis for the eighteenth assignment of error. The answer of the witness was: "I think that is far enough back to be safe at any time." It is said in argument that the question

called for a conclusion of the witness. Undoubtedly it called for an opinion based upon his experience and his knowledge of the movement of the car upon the particular occasion. It is said that it was the duty of the plaintiff's intestate to apply his brakes in sufficient time to stop his car at the proper point. Undoubtedly that is true, but the question involved is whether, under all the circumstances, he attempted properly to perform his duty. We think none of the errors based on the admission and rejection of testimony have merit.

2. The errors assigned upon the rulings of the court refusing to direct a verdict for the defendant, each of them, necessarily raise the question whether the court can properly determine as matter of law, *first*, that there was no testimony showing the defendant to have been negligent as charged; or, *second*, that as a matter of law the plaintiff's intestate was guilty of negligence contributing to his death. These propositions are argued at length, and we think no useful purpose would be served by discussing them in this opinion. It is settled law in this State that an employé does not assume the risk attending the breach of a statutory duty by his employer, although he may nevertheless be guilty of conduct contributing to his own injury, and that if the breach of the statutory duty by the employer causes or proximately contributes to the injury complained of, and there is no contributory negligence on the part of the employé, he may recover his damages.. It is apparent that the defendant failed to perform the statutory duty to equip its cars with brakes. Whether this failure contributed to the failure to stop the particular car at the particular time, in a place of safety, is, upon this record, a question of fact, one most intimately associated with the other question of fact, namely, whether plaintiff's intestate acted without negligence. We are of opinion that neither of these questions can be answered by saying, what is undoubtedly true, that plaintiff's intestate might have stopped the car in a place of safety. On the contrary, both questions must be an-

swered with reference to the manner in which the defendant's road was operated, its cars run, the experience of its employés, and the duty of those employés to act up to or with reference to such experience. There are few accidents of this nature that are not preventable, provided some one acts in season, if the sole object and purpose of action is to prevent the accident. But affairs are not conducted according to any such rule. It is insensible to say that, because plaintiff's intestate might have stopped his car 100 feet or 80 feet from the railroad crossing by the use of the brake with which the car was equipped, it was negligence on his part to run the car closer than that to the railroad crossing. It is equally insensible to say that this affords reason for the conclusion that the failure to equip the cars in the statute way did not cause or contribute to the catastrophe.

3. We think there is no occasion to set out the argument of counsel for plaintiff which is complained about. Whatever correction was required, the court made in his statement to the jury addressed directly to counsel's exceptions to the argument. We are not convinced that defendant was in any way prejudiced.

4. A number of the assignments of error based upon refusals to charge as requested involve the points raised upon the motions to direct a verdict, which need not be further considered. We have said already all that is necessary to be said with reference to the point presented by defendant's sixteenth request to charge, which was:

"If you find that motorman Rivers could, with the brake upon the car, have stopped his car a distance 30 feet away from the railroad crossing, and did not do so, then he was guilty of contributory negligence and cannot recover."

Upon this subject the court said to the jury:

"If the brake on such car at the time of the injuries to and death of Mr. Rivers was incompetent and defective as claimed by plaintiff, and he knew that fact, then it was

his duty to have checked and stopped such car at such distance before reaching the intersection of said lines that he could have avoided the possibility of a collision between such train and said car, and, if he failed to do so, plaintiff cannot recover. On the other hand, if such brake was so incompetent and defective and he did not know that fact, and it had not come to his attention in any way prior to the time of such collision, then he might assume that such brake was in its ordinary condition, and that said car could be stopped within such reasonable time, and at such place as a reasonable operation of it, with its brake in ordinary condition, would enable him, and in such event, as matter of law, he would not be guilty of contributory negligence, notwithstanding the train and car were so brought into collision. Certain rules of defendant governing the handling and operation of such car have been offered in evidence, and I charge you that it was the duty of Mr. Rivers to have observed such rules, and, if he knowingly or carelessly failed to do so, plaintiff cannot recover; but if he observed such rules and the collision was brought about entirely by reason of the failure of. defendant to equip such a car with said electric or air brake, or by reason of the incompetent and defective condition of the brake on such car, unknown to him until the time of the collision, then it cannot be said as matter of law that an unavoidable violation thereof, resulting in the collision, would preclude plaintiff from a recovery. The fact that the car in question did not have air brakes makes no difference in this case, unless the accident was the direct result of the braking power or braking facilities. If from the evidence you find that motorman Rivers could with the brake upon the car have brought his car to a stop before crossing the railroad track in question at the time and place in question, then plaintiff cannot recover, and your verdict must be for defendant. The mere fact that motorman Rivers was killed cannot be considered by you as negligence. Before the plaintiff can recover in any event, it is necessary for her to establish proofs of these separate and distinct facts, namely, that the plaintiff's decedent himself at the time of the happening of the accident was in the exercise of due care, and acting in obedience to the rules of the company, as construed by the company, and in compliance with the laws of the State, and without fault upon his part; (2) that the negligence alleged on the part of the defendant

was the direct cause of the decedent's death, and it is necessary for the jury to find these two propositions by a preponderance of the evidence in the case, and, unless you find the existence of these two propositions by the preponderance of the evidence, your verdict will be for the defendant.  Having heard all of the testimony in this case, if you are unable to determine by a preponderance of the evidence that the plaintiff is entirely free from negligence contributing to the accident, then your verdict must be for the defendant.  If you find that the accident occurred by reason of an error in judgment upon the part of the motorman as to the distance that it would take to stop his car on the morning in question, or as to the condition of the rails as to being slippery or otherwise, or an error of judgment in any other particular on the part of the motorman, then your verdict should be for the defendant.  If you find that the collision was the result of an unexplainable accident, plaintiff cannot recover, and your verdict should be for the defendant."

Defendant was entitled to no more favorable instructions.  We are impressed that the court might very properly have said to the jury that it was the duty of plaintiff's decedent to stop the car before going upon the crossing (2 Comp. Laws, § 6464) whatever the length of the sidewalk alongside of defendant's track may have been, and, further, that the maintenance of the particular walk was not negligent conduct of the defendant, for which plaintiff could recover.  But no such requests were preferred.  The requests for instructions which referred to these matters contained much more which was objectionable and which the court could not properly have given.  For example, the length of the planking was not immaterial in the case, as the request suggests, and, while the length of the platform did not excuse violation by the motorman of a statute duty, it may have excused an effort to bring the car alongside the platform, instead of stopping it farther away from the crossing.  In view of the requests and of the entire charge to the jury, we are not inclined to reverse the case for the failure to instruct as herein suggested.

5. Except as has been stated, there is no ground for criticising the charge of the court.

6. Besides the points already referred to, the argument that it was error to refuse a new trial is based upon the alleged failure of the court to state a proper rule for computing the present worth of the expected annual contributions of decedent to his family, which it is claimed resulted in an excessive verdict, and the failure of the court to give sufficient reasons for denying a new trial. As to the last proposition, we are of opinion that the court ought not to have granted a new trial for any reason, and therefore the matter becomes immaterial.

Upon the subject of the amount of damages plaintiff was entitled to recover, the charge very carefully laid down rules in harmony with the decisions of this court, including the one that:

"By the present worth of a sum of money payable in the future, I mean such a sum as put at simple interest presently would amount to the desired sum at the end of such period of time. As an illustration: The present worth of $1,000 payable one year from date is found by dividing $1,000 by 1.05; if payable in two years by dividing $1,000 by 1.10; if payable in three years by dividing $1,000 by 1.15; and so on, covering the entire period of time under consideration."

We find no reversible error, and the judgment of the court below is affirmed.

MOORE, McALVAY, BLAIR, and STONE, JJ., concurred.

### ON MOTION FOR REHEARING.

OSTRANDER, C. J. We should content ourselves by refusing the rehearing asked for by appellant without giving reasons therefor but for the fact that counsel for appellant, and counsel in other causes in which the point is involved, insist that the rule for ascertaining the present worth of contributions to be made from time to time, during a course of years, stated by the trial judge and

approved by this court, is not the proper rule. It is said that when the result of the application of the rule is a sum of money in hand which will produce, if placed at interest at the legal rate, a yearly return equal to or greater than the amount of the estimated annual contribution, it is manifest that an incorrect result has been reached. As stated by the appellant:

"The judgment rendered would pay plaintiff more in interest than the amount of the contribution from her husband if living. She, if entitled to anything, is entitled to the amount of his contributions during the time the jury finds that he would have lived. The judgment as rendered gives her an income in perpetuity which is in excess of his contributions."

Counsel have presented a computation, which appears to be mathematically correct, showing that a principal sum of $5,566.40, placed at interest at 5 per cent. per annum, will yield sufficient to pay $330 annually for 38 years, at the end of which time the principal sum will be exhausted. It appears to be conceded that the jury estimated the annual contribution lost to plaintiff as equal to $330 and the decedent's expectancy of life as 38 years. The verdict returned was for $6,919.96. That this sum is the present worth of $330 for 38 years, if the computation follows the rule laid down by the court, cannot be doubted. We shall not restate the various arguments which have been made. The total of the contributions which in the case presented is lost to plaintiff is $12,540. It is convenience, and convenience only, which considers the contributions as annual. They would not have been made annually, but daily, and weekly. It is convenience, and convenience only, and an effort to ascertain and apply a rule which can be conveniently applied to the facts and result in substantial right, which considers the division of the total annual contribution for the first year by $1.05. The rule considers $1 in hand as worth $1.05 at the end of a year and, conversely, that $1.05 payable in one year may be presently paid with $1. The rule is simple, and, if

it is the true rule for one year, is the true rule for any number of years. With variations depending upon the interest rate, and upon whether simple or compound interest may be received, it is, so far as we are informed, the rule in common use for determining the sum of money required to secure a given annuity for any number of years, and the present worth of a sum payable in the future. Plaintiff, it is supposed, has lost by the conduct of defendant $12,540, which would have been paid to her from time to time during a period of 38 years. If defendant were now to assume to make the contributions, year by year, it would cost it $12,540 in the end; no less, no more. To presently compensate her for this loss, the present value of these contributions is to be estimated. This is the problem which is, in fact, presented. It is idle to argue, in support of a rule for such estimation, that it is such sum as, if presently placed at interest at 5 per cent. per annum, will yield her annually an amount equal to the estimated annual contribution and also exhaust the principal at the end of the period. Such a rule cannot in fact be applied to produce such a result. There are too many contingencies, in fact, the risk and cost of which neither plaintiff nor the fund should be charged with. By the rule adopted, and which we approve, plaintiff has discounted her demand, allowing defendant interest upon each installment at the rate of 5 per cent. per annum for the period which is anticipated. Whatever the result, it is, in our opinion, the correct result.

BIRD, HOOKER, MOORE, MCALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.