Janice **KIRCHGESSNER**, Personal Representative of the Estate of John Kirchgessner, Deceased, Plaintiff–Appellee, Cross-Appellant,

v.

**UNITED STATES of America,**
Defendant–Appellant,
Cross–Appellee.

Nos. 90–2253, 90–2255, 90–2330 and 90–2331.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 21, 1991.

Decided March 9, 1992.

Rehearing Denied April 6, 1992.

Frederick B. Bellamy (argued), Michael S. Cafferty (briefed), Evans & Luptak, Detroit, Mich., for plaintiff-appellee, cross-appellant.

James C. Wilson (argued and briefed), U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., Roy C. Hayes, U.S. Atty., Schureman, Frakes, Glass & Wulfmeier, Detroit, Mich., Stuart M. Gerson, U.S. Dept. of Justice, Civ. Div., Washington, D.C., Mary Jo Moltzen, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., for defendant-appellant, cross-appellee.

Before KENNEDY and NELSON, Circuit Judges; and LIVELY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

The United States appeals the damages award against it in this suit under the Federal Tort Claims Act. Plaintiff Kirchgessner cross-appeals the damages assessment on independent grounds. For the reasons that follow, we AFFIRM the judgment of the District Court in part, REVERSE in part, and REMAND for entry of damages in accordance with this opinion.

## I.

On March 1, 1986, John Kirchgessner was fatally injured in an airplane accident. Janice Kirchgessner, wife of the decedent and personal representative of the estate, filed suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–80 ("FTCA"). At trial, the accident was determined to be due in part to the negligence of two FAA air traffic controllers. Responsibility was assessed at ten percent. The liability findings are not contested.

The District Court entered judgment against the United States in the amount of $315,628, representing both past and future economic and non-economic damages. Both parties take issue with various elements of the computation of those damages. Specifically, plaintiff contends that the court erred by deducting income taxes from the gross earnings estimate in determining future economic damages, erroneously determined the decedent's work life expectancy, and reduced future damages to their present value in an incorrect manner. The government contends that the District Court improperly failed to account for the post-retirement consumption of the decedent in calculating future economic losses, and incorrectly determined the present value of those losses. We address each of these contentions below.

## II.

The FTCA provides for recovery under state law against the United States for the negligent acts of its employees "to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. This waiver of sovereign immunity is not unlimited, however, for the Act also prohibits recovery of pre-judgment interest and punitive damages. *Id.* ("The United States ... shall not be liable for interest prior to judgment or for punitive damages.") Claims under the FTCA entail a two-step analysis. First, the district court applies local law to determine liability and to assess damages. Second, federal law is invoked to bar proscribed recoveries, such as punitive damages. The parties here have alleged error with respect to both steps in the analysis. We begin, therefore, with the determination of damages under local law. To the extent it is clearly established, we apply Michigan law. When state law is silent or unclear, we apply federal law.

### A. Income Taxes Under Michigan Law

Wrongful death recoveries under Michigan law are statutory. The provision relating to future economic losses reads as follows:

In every action under this section the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances in-

cluding ... damages for the loss of financial support.

Mich.Comp.Laws Ann. § 600.2922(6). The award is therefore based upon the support the claimant would have received but for the death. In determining this amount, the question arises as to whether the award should include a deduction from future income to reflect the income taxes that the decedent would have had to pay on the lost income.

Plaintiff relies on a line of personal injury cases to contend that Michigan law does not allow for the deduction for income taxes. In light of the different nature of the recovery awarded in personal injury cases, however, as opposed to the wrongful death case here, we do not consider those cases dispositive.

Personal injury awards compensate the victim for the loss incurred, the lost income potential. The fact that the victim would have been subsequently obligated to pay the money to third parties such as the government is not relevant in determining what the plaintiff lost due to the wrongful actions. The economic damages component of wrongful death awards, in contrast, attempts to compensate for what the claimant lost, i.e. the benefits that would have accrued to him by virtue of the decedent's income but for the death.[1] This is necessarily an out-of-pocket amount.

Plaintiff's principal case, *Gorelick v. Department of State Highways*, 127 Mich. App. 324, 342, 339 N.W.2d 635 (1983), expressly noted that taxes are to be deducted from tort awards when the authorizing statute provides so. We consider *Miller v. State Farm Mutual Automobile Insurance Co.*, 410 Mich. 538, 302 N.W.2d 537 (1981), to be instructive with respect to statutory authorization for taking income taxes into account in determining wrongful death recoveries.

*Miller* involved an application of the survivor's loss benefits under the Michigan no-fault laws. The court stated that the survivor's loss benefits should "correspond to *economic loss* damages recoverable under

[the] wrongful death act." 410 Mich. at 560, 302 N.W.2d 537 (emphasis in original). Noting that wrongful death act damages "focus on the financial loss actually incurred by the survivors as a result of their decedent's death," *id.* at 561, 302 N.W.2d 537, the court concluded that it would be improper and unrealistic to "fail to acknowledge that surviving dependents would *not* have received for their support that portion of the deceased's income that he would have been required to pay in taxes." *Id.* at 564, 302 N.W.2d 537 (emphasis in original).

We have found no subsequent cases from the Michigan Supreme Court retreating from this conceptualization of the purposes and operation of wrongful death recoveries in Michigan. We do not read the failure of state appellate courts to extend the analysis to personal injury awards, *see Peterson v. Department of Trans.*, 154 Mich.App. 790, 399 N.W.2d 414 (1986); *Gorelick*, 127 Mich.App. 324, 339 N.W.2d 635 (1983), to constitute authority for a change in Michigan law of wrongful death awards. We therefore conclude that Michigan law does provide for the deduction of taxes in economic loss awards for wrongful death.

### B. Income Taxes Under Federal Law

To the extent Michigan law is unclear or unsettled, moreover, we apply federal law. For the reasons enunciated above with respect to Michigan law, we consider it error under federal law to fail to deduct for income taxes in assessing future economic loss in wrongful death awards. Although this Court in *Kalavity v. United States*, 584 F.2d 809 (6th Cir.1978), did hold that taxes should not be deducted from the type of award at issue here, we do not consider it dispositive, for two reasons. First, this Court relied on the fact that the case before it involved a low income level, as opposed to the high income at issue here. To the extent the burden imposed on the jury was considered to outweigh the minimal impact of taxes for low income levels, those

---

**1.** Although we recognize the potential advantage for wrongful death tortfeasors, relative to personal injury tortfeasors, that is the province of the state, the law of which we are applying.

concerns are not applicable here. This case was tried before the court, and the dollar amounts at stake are significant.

Second, the Supreme Court has since spoken to the concerns that motivated the *Kalavity* Court. In *Norfolk & Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), the Court held that income tax deductions were proper in awards under the Federal Employee's Liability Act. Although *Liepelt* involved a different statute, we consider the Court's reasoning informative. *Liepelt* disposed of the traditional reasons advanced for not including tax deductions, namely the complications imposed on the jury, the complex and varying tax burdens borne by individuals, and the typically minimal impact of the deduction. We adopt the same analysis to be applied in cases under the FTCA before a judge.

■ We further note that concerns raised by the creation of an advantage for defendants are not applicable to FTCA cases, for the government will simply be relieved of paying out to plaintiff the money that, absent the wrongful death, would have been paid to the decedent and then collected by the government as taxes.[2] Therefore, as a matter of federal law as well, economic loss awards in wrongful death actions under the FTCA should be reduced to reflect the effect of income taxes.

### C. Post-Retirement Consumption of the Decedent

■ The District Court declined to deduct from the economic loss award the post-retirement consumption of the decedent. The court reasoned that the substantial savings the decedent and his wife would have accumulated by the date of retirement would generate sufficient income so that the decedent would not have had to use the proceeds of his work-related retirement benefits for personal consump-

tion. In the absence of any evidence that there was such an accumulation of savings at the time of the death, such an analysis is illogical and inconsistent with the Michigan wrongful death statute.

As noted above, the Wrongful Death Act provides for the recovery of the loss of financial support the claimants would have received from the decedent. Mich.Comp. Laws Ann. § 600.2922(6). This is determined in part by projecting the income that the decedent would have received over the course of his working life. Included in that value are the contributions to retirement plans and social security benefits paid by the employer. It is conceptually inconsistent to include those funds in the calculation of the total benefits available, however, yet not account for their intended use. *See Miller*, 410 Mich. at 574, 302 N.W.2d 537, (Levin, concurring). It would not be improper for a court to exclude the retirement plan contributions of the employer, and then not deduct for post-retirement consumption. Similarly, it might arguably be acceptable to fail to deduct if, at the time of death, the decedent had accumulated sufficient savings to support his consumption. Even there, the savings must have accumulated by the time of death, for any subsequent savings would be the direct result of the earnings already accounted for. We conclude, therefore, that it is error under Michigan and federal law to include in the value of the earnings the retirement benefits, yet not account for their consumption.

### D. Discount Rate to be Used to Determine Present Cash Value

■ Michigan law requires that all future economic and non-economic damage awards be reduced to "gross present cash value." Mich.Comp.Laws Ann. § 600.-6306(1)(c), (1)(e). "Gross present cash val-

---

2. We recognize that the economics of this analysis are imperfect. For example, it may be that a windfall is created for the federal government—if state and local income taxes are deducted from the economic loss estimates, the federal government is relieved of paying out funds that it never would have collected. In light of the relative magnitudes of the tax burdens at issue, however, we consider the effects to be *de minimis*, or at least an acceptable imperfection in an admittedly imprecise and imperfect set of calculations.

ue" is defined to mean "the total amount of future damages reduced to present value at a rate of 5% per year." Mich.Comp. Laws Ann. § 600.6306(2). The parties are in disagreement with respect to reconciling before and after tax yields, the inflation rate, the net discount rate, and the discount rate specified in the statute. The government submitted expert witness testimony utilizing a discount rate of seven and a half percent, a wage inflation rate of five and a half percent, and thus a net discount rate of two percent. The District Court accepted the government witness' estimations of wage losses, incorporating the five and a half percent yearly increase, but discounted to present value at the statutorily specified five percent rate. This resulted in the anomalous situation of a negative net discount rate being applied. The government objects to this as overcompensating the plaintiff.

We agree with the first half of the government's position, namely, that the combination of a long-term wage inflation factor of seven and a half percent, when used in conjunction with a fixed discount rate of five percent, does result in overcompensating the plaintiff. The overcompensation results from the fact that the two terms should be related. The discount rate should consist of both an inflation factor and a real rate of return. The Michigan Legislature has artificially specified that the discount rate should be five percent. Any overcompensation therefore results either from a failure to properly select an inflation factor in light of a specified discount rate or in the compelled use of the artificial discount rate. Inasmuch as the government submitted the only evidence offered with respect to the wage inflation factor, we decline to find reversible error in the District Court's use of that evidence. However, since the District Court will be required to recompute damages, it should use the actual long-term inflation rate testified to by the government's economic expert witness of five and three-eighths percent rather than rounding up to five and a half percent. This will lessen the overcompensation.

The government contends in the alternative that the statutorily specified five percent discount rate represents a net discount rate, and therefore the future damage estimates should have been discounted by twelve and a half percent, to result in the five percent net rate. We see no basis for concluding that the Michigan legislature intended a net discount rate of five percent, given the conventional economic understanding that net discount rates are in the one to three percent range. *See, e.g., Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 548–49, 103 S.Ct. 2541, 2556–57, 76 L.Ed.2d 768 (1983) (although economic analysis is not conclusive, a real rate of return of 1–3% is not reversible error). The only reason for setting the specified five percent to be the net discount rate would be to equilibrate it with the ultimately ill-advised wage increase factor adopted by the government. We decline to do so.

### E. Method of Discounting to Determine Present Cash Value

Plaintiff, on the other hand, contends that the District Court used the correct number in discounting to present value, but used the wrong method. Plaintiff maintains that a simple interest rate should be used. We disagree. The statute calls for the future damages to be reduced for each year, using the five percent rate. Were we to adopt a simple interest rate methodology, the later years would be discounted to present cash value at substantially less than five percent. We see no basis for utilizing a simple interest rate in determining "gross present cash value," and find no error in the compound method.

Although the Standard Jury Instruction utilized in wrongful death cases filed before October 1, 1986 called for a jury calculation using a five per cent simple interest rate, Mich.Comp.Laws Ann. § 600.6303(2) now specifically requires the trial court, rather than the jury, to reduce awards to present value. The traditional considerations in favor of using a simple interest rate, therefore, namely the difficulty and potential for juror confusion, have been statutorily removed. We consider it well within the province and competence of the

trial court to reduce awards to present value using a five per cent per year compound rate methodology.

### F. Work Life Expectancy

■ Finally, plaintiff contends that Michigan law provides for earnings estimates based upon the decedent's estimated life span, rather than work life expectancy. Mich.Comp.Laws Ann. § 600.6305(2) provides that "[i]n the event of death, the calculation of future damages shall be based on the losses during the period of time the plaintiff would have lived but for the injury upon which the claim is based." Plaintiff reads this as mandating a finding that the decedent's work life was coterminous with his life expectancy. We disagree. Nothing in that provision indicates to us any intent to limit the traditional role of the finder of fact in determining the loss incurred during the period prescribed by the statute. The District Court made a factual finding that the decedent would have worked to age sixty-five. We see no error in that finding. In accordance with the statute, the future damage is based on the loss incurred during the period of time the plaintiff would have lived. *See II Michigan Law of Damages,* § 5.16 (ICLE) (2d ed., Stockmeyer) (1990).

### III.

■ We now address the second step in the FTCA damage award analysis, looking to federal law to determine whether any of the state law award is proscribed. The District Court ruled that an award for economic losses from the work life of the decedent should be based on estimates of the decedent's projected after tax income, rather than on projected before tax gross income. It reasoned that an award to the decedent's estate of both the net earnings and the income taxes that would otherwise have been paid went beyond compensating the estate for its losses, and therefore became punitive in nature. Since the FTCA

was intended to be compensatory only, and bars punitive damages, utilizing gross income to determine lost earnings was barred under federal law.[3]

We first note that, analytically, the District Court was incorrect in applying the punitive damages proscription without first calculating the appropriate award under Michigan law. We reach the merits of its application of the second step in the analysis, however, in light of the necessity of our interpreting state law. Were we to be incorrect in our assessment of the inclusion of income tax effects in wrongful death awards under Michigan law, the District Court's opinion would still deduct for income taxes based upon the punitive characterization.

The Supreme Court has since addressed this issue. In *Molzof v. United States,* — U.S. ——, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992), the Court held that the punitive damages proscription of the FTCA, 28 U.S.C. § 2674 bars only those awards that under traditional state law analysis operate to punish the defendant for the degree of wrongfulness of his conduct. None of the damages awarded in this case, therefore, can be said to be "punitive damages" under the FTCA.

### IV.

For the reasons set forth above, we AFFIRM the findings of the District Court in part, REVERSE in part, and REMAND for entry of damages.

---

**3.** The District Court also concluded that an award of lost earnings from the expected work years from age sixty-five to age seventy-two was barred as being punitive. Our analysis of the punitive damages proscription as applied to income tax effects applies to the work life determination as well.