NATION v W D E ELECTRIC COMPANY

Docket No. 104659. Argued March 5, 1997 (Calendar No. 14). Decided
    June 3, 1997.

  Michael Nation, an independent contractor employed by W. D. E.
      Electric Co., brought an action in the Genesee Circuit Court against
      W. D. E. Electric Company and others, seeking damages for injuries
      sustained in a fall from a ladder while he was engaged in electrical
      work at C. J. Link Lumber Company. The court, Judith A. Fullerton,
      J., entered judgment on a jury verdict, finding the plaintiff to have
      been sixty-five percent at fault, but awarded damages against
      W. D. E. Electric for its comparative negligence. At the defendant's
      request, the plaintiff's future damages were reduced to present
      cash value, using compound interest. The Court of Appeals,
      MARKEY, P.J., and MACKENZIE and C. H. STARK, JJ., affirmed (Docket
      No. 169319). The plaintiff appeals, limited to the issue whether
      reduction of future damages to present cash value under MCL
      600.6306; MSA 27A.6306 is to be calculated using compound or sim-
      ple interest.

    In an opinion by Justice BOYLE, joined by Chief Justice MALLETT,
  and Justices CAVANAGH and KELLY, the Supreme Court held:

    Future damages under § 6306 are to be reduced to present cash
  value using the same simple interest calculation that has been
  employed under the common law.

    1. The common law has long favored simple interest and dis-
  favored compound interest to reduce damages to present value.
  While § 6306 is silent with regard to the kind of interest rate to be
  employed, the Legislature is deemed to have acted with an under-
  standing of the common law in existence at that time. Because the
  Legislature did not expressly provide for compound interest when
  it codified reduction of damages to present value, it must be pre-
  sumed that it intended to maintain the status quo. To conclude oth-
  erwise would violate the clear dictates of well-established rules of
  statutory interpretation, and would run counter to the legislative
  history of the act.

    2. What is a reasonable method for reducing future damages to
  present value is a policy judgment based on an assessment of eco-
  nomic indicators. Because the statute does not indicate that the

Legislature has resolved this question in favor of compound interest, continued application of simple interest is the prudent way to proceed.

Reversed and remanded.

Justice BRICKLEY, joined by Justices RILEY and WEAVER, dissenting, stated that reducing a judgment for future damages to present cash value by the use of simple interest is an antiquated common-law doctrine that unfairly penalizes the defendants by overstating their financial liability. Where the Court has the justification and the authority to change the common law, it should not hesitate to do so if justice will be better served.

213 Mich App 694; 540 NW2d 788 (1995) reversed.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Robert H. Darling* and *Richard D. Toth*), for the plaintiff.

*Gault Davison, P.C.* (by *Edward B. Davison*), for the defendant.

Amici Curiae:

*Mark Granzotto* for Michigan Trial Lawyers Association.

*Plunkett & Cooney, P.C.* (by *Robert G. Kamenec*), for Michigan Defense Trial Counsel, Inc.

*Siemion, Huckabay, Bodary, Padilla, Morganti & Bowerman, P.C.* (by *Raymond W. Morganti*), for PICOM Insurance Company and Michigan Physicians Mutual Liability Company.

BOYLE, J. We granted leave in this case to decide whether reduction of future damages to present cash value under MCL 600.6306; MSA 27A.6306 is to be calculated using compound or simple interest. We reverse the decision of the Court of Appeals and hold that simple interest is appropriate under the statute.

FACTS AND PROCEDURAL HISTORY

Plaintiff Michael Nation, an independent contractor employed by the W. D. E. Electric Company, was engaged in electrical work at the C. J. Link Lumber Company on June 24, 1992, when he fell from a ladder.[1] He sued defendants C. J. Link, Ecolo-Tech, Inc., and W. D. E. Electric Company in the Genesee Circuit Court on various tort theories for the injuries he sustained in the fall. The jury found plaintiff sixty-five percent at fault, but awarded damages against one defendant, W. D. E. Electric, for its comparative negligence as follows: $15,000 for past lost earning capacity and medical expenses, $2,700 for past pain and suffering, $6,372 for future medical expenses, and $1,000 a year for future pain and suffering until the year 2034. The jury applied annual compound interest of five percent to the $1,000 award. It did not award damages for future lost earning capacity.

The trial court, at defendant's request, reduced plaintiff's future damages to a present cash value of $42,000, using compound interest. The court rejected plaintiff's request that simple interest be employed to arrive at a present cash value of $60,611.31.[2] The plaintiff appealed on various grounds, including

---

[1] C. J. Link had contracted with W. D. E. for the installation of a dust-collection system.

[2] Simple interest reduces damages arithmetically by dividing damages in the first year by 1.05, in the second by 1.10, in the third by 1.15, etc. Compound interest reduces damages exponentially each year by dividing the first year by 1.05, but then multiplying the denominator in each year by an additional five percent, so that the denominator in year two is 1.1025, in year three is 1.157625, etc. In effect, the compound method adds accrued interest to the principal before charging the applicable rate of interest to the adjusted principal. We do not dispute here that compound interest is the standard generally employed in the business and financial world today.

whether the court used the proper method to reduce the award of future damages. The Court of Appeals affirmed, 213 Mich App 694; 540 NW2d 788 (1995), and we granted leave "limited to whether MCL 600.6306; MSA 27A.6306 requires interest compounding to reduce a jury award to present cash value." 453 Mich 915 (1996).

I

Section 6306 provides in relevant part:

(1) After a verdict rendered by a trier of fact in favor of a plaintiff, an order of judgment shall be entered by the court . . . against each defendant . . . in the following order and in the following judgment amounts:

\*          \*          \*

(c) All future economic damages, less medical and other health care costs, and less collateral source payments . . . reduced to gross present cash value.

(d) All future medical and other health care costs reduced to gross present cash value.

\*          \*          \*

(2) As used in this section, "gross present cash value" means the total amount of future damages reduced to present value at a rate of 5% per year for each year in which those damages accrue . . . .

Before 1986, under the common law, the obligation to perform the reduction of future damages to present cash value in personal injury actions was the obligation of the jury. SJI2d 53.03 instructed the jury to perform the calculation using simple interest. Under the tort reform legislation passed in 1986, § 6306 transferred the obligation to perform the calculation to the trial judge. We decline the invitation to hold

that this transfer abrogated the method in place under the common-law scheme. The Legislature did not explicitly require the use of compound interest as it did in the context of judgment interest.[3] Moreover, the Legislature contemporaneously rejected a bill seeking to require just that.[4]

The common law has long favored simple interest and disfavored compound interest, which it has characterized as "interest on accrued interest." See, e.g., *Schwartz v Piper Aircraft Corp*, 90 Mich App 324, 327; 282 NW2d 306 (1979). The Court of Appeals aptly there observed:

> [T]hose courts which have dealt with similar problems have uniformly rejected compound interest except where specifically authorized by statute or in cases where compounding of interest was granted as a penalty for some misconduct on the part of a defendant. [*Id.* at 326.][5]

For nearly eighty years before the enactment of § 6306, Michigan approved the use of simple interest to reduce damages to present value. *Rivers v Bay City Traction & Electric Co*, 164 Mich 696; 128 NW 254 (1910). SJI2d 53.03, still applicable to damage awards in cases not covered by § 6306,[6] reflects the state of the common law under *Rivers* before the enactment of § 6306. A dispute arises now, however, with regard to the meaning of § 6306 because the Leg-

---

[3] See MCL 600.6013(5);    MSA 27A.6013(5),    MCL 600.6455;    MSA 27A.6455.

[4] See House Bill 5176.

[5] See also 47 CJS, Interest & Usury, § 6(c), p 31 ("The law does not favor compound interest or interest on interest . . . . As a general rule, in the absence of contract therefor . . . or of [a] statute authorizing it, compound interest is not allowed to be computed on a debt").

[6] RJA, chap 63 concerns personal injury verdicts and damages.

islature did not explicitly specify which method should be employed by the court in reducing future damage awards to present value.

II

In resolving disputed interpretations of statutory language, it is the function of a reviewing court to effectuate the legislative intent. *Hiltz v Phil's Quality Market*, 417 Mich 335, 343; 337 NW2d 237 (1983).[7] If the language used is clear, then the Legislature must have intended the meaning it has plainly expressed, and the statute must be enforced as written. *Id.* Section 6306 is silent with regard to the kind of interest rate to be employed. However, the Legislature is deemed to act with an understanding of common law in existence before the legislation was enacted. *Nummer v Treasury Dep't*, 448 Mich 534, 544; 533 NW2d 250 (1995); *Garwols v Bankers Trust Co*, 251 Mich 420, 424-425; 232 NW 239 (1930).[8] Moreover, "statutes in derogation of the common law must be strictly construed, and will not be extended by implication to abrogate established rules of common law." *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 508; 309 NW2d 163 (1981). In other words, "[w]here there is doubt regarding the meaning of such a statute, it is to be 'given the effect which makes the least rather than the most change in the common law.'" *Energetics, Ltd v Whitmill*, 442 Mich 38, 51; 497 NW2d 497 (1993). "This Court will presume that the

---

[7] See also *Gage v Ford Motor Co*, 423 Mich 250, 260; 377 NW2d 709 (1985) ("The cardinal rule of statutory construction is to give effect to the intent of the Legislature").

[8] See also *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 506; 475 NW2d 704 (1991) (presuming that the Legislature acts with knowledge of statutory interpretations by the Court of Appeals).

Legislature of this state is familiar with the principles of statutory construction." *People v Hall*, 391 Mich 175, 190; 215 NW2d 166 (1974).

These principles of statutory construction alone are ample authority for the conclusion that simple interest was intended by the Legislature when reenacting § 6306 in 1986. The Legislature did not expressly provide for compound interest, instead making it clear only that the responsibility for making the calculation was being transferred from the jury to the trial judge. The tort reform legislation of 1986 was a comprehensive effort involving numerous compromises. It strains common sense to surmise that the Legislature was unaware of the interest-calculation question and simply overlooked the common-law scheme for reducing judgments to present cash value using simple interest. We therefore presume the Legislature intended to maintain the status quo when it changed the statute without expressly providing that compound interest would be required. To conclude otherwise would violate the clear dictates of well-established rules of statutory interpretation.

III

Extrinsic evidence in the form of legislative history supports our conclusion. First, the Legislature enacted § 6306 as part of 1986 PA 178. That same act also amended parts of MCL 600.6013(5); MSA 27A.6013(5) and MCL 600.6455; MSA 27A.6455, both of which provide for calculation of the interest on judgments using compound interest. Section 6013(6)[9] provides in pertinent part:

---

[9] The Legislature renumbered and reenacted subsections (5)-(10) as subsections (6)-(11).

[F]or complaints filed on or after January 1, 1987, inter-
est on a money judgment recovered in a civil action shall be
calculated at 6-month intervals from the date of filing the
complaint at a rate of interest that is equal to 1% plus the
average interest rate paid at auctions of 5-year United
States treasury notes during the 6 months immediately pre-
ceding July 1 and January 1, as certified by the state treas-
urer, *and compounded annually*, pursuant to this section.
[Emphasis added.]

Before being "extensively revised" in 1980, *Gage v
Ford Motor Co*, 423 Mich 250, 253; 377 NW2d 709
(1985), § 6013 was silent regarding whether simple or
compound interest applied. Acknowledging the com-
mon-law preference for simple interest that was dis-
positive in *Schwartz*,[10] *Gage, supra* at 259, this Court
held that the Legislature's silence in this regard
demonstrated "that the Legislature did not intend to
provide for compounding of [judgment] interest
before June 1, 1980," the effective date of the statute.
*Id.* at 258. Rather, Justice BRICKLEY, speaking for a
unanimous Court, concluded that "[t]he analyses of
the bill, as well as the wording of the amended stat-
ute, clearly indicate[d] the intent that before June 1,
1980, interest was to continue to be computed in the
former manner—six percent interest without com-
pounding." *Id.* at 258. In reaching this conclusion, we
reasoned, "It was clear to the Legislature when it
embarked on this amendment that the six percent
interest had been construed to be simple interest,
*Schwartz, supra*, and it made no attempt to change it

_____

[10] In *Schwartz, supra*, the Court of Appeals addressed whether § 6013
provided for simple or compound interest on a money judgment. Like the
statute now before us, § 6013 was silent with respect to the kind of inter-
est to be employed, and the Court concluded simple interest was appro-
priate because of the common-law preference. *Id.* at 326.

retroactively." *Gage, supra* at 259. We find this reasoning to be compelling here.

Assuming the Legislature was aware of the common law as it previously existed, which disfavored compound interest in the context of interest on judgments, as well as in the context of reduction to present cash value, it could have explicitly abrogated the common-law rule for reduction as it had for § 6013. Given that § 6306 evidences no such decision by the Legislature,[11] and in light of our reasoning in *Gage,* we decline to depart from the established rule.

Second, the Legislature contemporaneously rejected House Bill 5176 in favor of the bill that became 1986 PA 178.[12] That bill would have expressly provided under subsection 6305(2) that "[f]uture damages must be reduced to present value by applying a discount factor of 3%, compounded annually." We are not inclined to second-guess the process attending the legislative choice made in reaching agreement on the language contained in § 6306. Our province is to give effect to the statute as enacted in the context of the common-law scheme in place at that time. In light of the Legislature's rejection of an explicit provision requiring compound interest, we presume the Legislature's silence evidences an intent that courts continue to use simple interest.[13]

---

[11] We reject defendant's assertion that the contrary conclusion is required if the statutes are read in pari materia.

[12] "We are aided in discovering legislative intent in enacting any statute by examining the proposed legislation it considered and rejected, contrasted with the provisions as finally adopted." *Miller v State Farm Mut Automobile Ins Co,* 410 Mich 538, 566; 302 NW2d 537 (1981).

[13] Thus, we defer to the legislative choice and reject the dissent's preference for changing the common law because compound interest may result in a more precise calculation.

IV

Finally, we reject the decision of the United States Court of Appeals for the Sixth Circuit in *Kirchgessner v United States*, 958 F2d 158 (CA 6, 1992), on which both defendant and the Court of Appeals relied. We find the opinion in that Federal Tort Claims Act[14] case unpersuasive because it fails to rely on Michigan authority and because its underlying rationale is incorrect.

Citing no Michigan or other authority to support its decision, the Sixth Circuit departed from the normal practice of employing simple interest in Michigan because "the difficulty and potential for juror confusion, have been statutorily removed." *Id.* at 162. While it is true that the common law under *Rivers, supra*, viewed five percent simple interest as a rule of convenience, *id.* at 709, we disagree with the Sixth Circuit's conclusion that the convenience sought had to do solely with the jury's inability to grasp the complexities of compound interest. Rather, the convenience rationale underlying *Rivers* relates to the inability of courts to precisely arrive at a mathematical figure that represents the value money received today will have at some future date. For the sake of convenience, the system takes its best guess at what will be necessary today to compensate the plaintiff for damages expected in the future. It is not a scientific exercise requiring actuarial precision,[15] but is "an effort to

---

[14] 28 USC 2674.

[15] The Sixth Circuit has chosen a different path, using modern-day actuarial principles that employ compound interest. *United States Steel Corp v Lamp*, 436 F2d 1256, 1280, n 11 (CA 6, 1970). Thus, *Kirchgessner* is consistent with the course taken in federal courts, where "the determination of the discount rate . . . rests within the sound discretion of the District Court." *Lamp* at 1280, n 11. We refuse to take such an approach because

ascertain and apply a rule which can be conveniently applied to the facts and result in substantial right . . . ." *Id.* Although defendant argues that this provides plaintiff a windfall, calculation of five percent compound interest is not only well within the competence of the trial court, it is also within the competency of a jury provided with a calculator. The question what is a reasonable method for reducing future damages to present value is a policy judgment based on an assessment of economic indicators.[16] The statute does not indicate that the Legislature has resolved this question in favor of compound interest. Until the Legislature sees fit to more clearly say otherwise, continued application of simple interest is the prudent way to proceed.

v

For the reasons stated above, we hold that future damages under § 6306 are to be reduced to present cash value using the same simple interest that has been employed under the common law for at least eighty years in Michigan. We reverse the decision of the Court of Appeals and vacate the trial court's judgment as it pertains to future damages. We remand the case to the trial court for entry of a judgment consistent with this opinion.

MALLETT, C.J., and CAVANAGH and KELLY, JJ., concurred with BOYLE, J.

---

the Legislature has specifically provided the applicable discount rate without evidencing any intent to alter the common-law procedure.

[16] Moreover, we find the *Kirchgessner* court's assertion that the discount in later years will be greater than five percent confusing because the converse might as easily be said of compound interest.

BRICKLEY, J. (*dissenting*). The Court holds today that a judgment for future damages must be reduced to present cash value by the use of simple interest. In my view, the Court errs by adhering to an antiquated common-law doctrine that unfairly penalizes defendants by overstating their financial liability. While restraint is a judicial virtue, where the Court has the justification and the authority to change the common law, it should not hesitate to do so if justice will be better served. Because the use of simple interest lacks the precision to accurately reflect the time value of money, and consequently overcompensates the plaintiff by overstating the present value of the judgment, I respectfully dissent.

I

MCL 600.6306(1)(e); MSA 27A.6306(1)(e) provides that the trial court shall reduce gross future noneconomic damages to present cash value. This reduction is computed at five percent per year.[1] The question that the statute leaves unanswered, and which is before us today, is whether that reduction should be accomplished through the use of simple or compound interest.

Neither party in this case disputes the need to reduce, or discount, a judgment for future damages to a present value. Money has earning power and can accumulate interest over time. For this reason, a dollar today is worth more than a dollar some time in the future. The purpose of discounting awards of

---

[1] "As used in this section, 'gross present cash value' means the total amount of future damages reduced to present value at a rate of 5% per year for each year in which those damages accrue . . . ." MCL 600.6306(2); MSA 27A.6306(2).

future damages to a present value is to reflect that earning power. Consequently, the use of simple interest to discount a future payment produces an imprecise result because the underlying assumption—that during the period before the payment is due the money could be earning *simple interest*—is faulty. Even the most staid investments, such as passbook savings accounts and certificates of deposit, pay interest on a compound basis.

"[I]nterest on interest may seem a detail, but is not . . . ."[2] The use of simple interest to discount a future payment is imprecise because money invested during the period before the payment is due earns compound interest. This inaccuracy would be less troubling if it fell equally on both parties. It does not, however, because the use of simple interest always *understates* the earning power of money, and thus *overstates* the defendant's liability because it fails to fully discount the future payment. The additional liability imposed by an imprecise calculation falls entirely on a defendant who must pay a judgment.

Although the amounts involved in this case were relatively small, they sufficiently demonstrate this principle. The jury awarded the plaintiff damages for pain and suffering at a rate of $1,000 a year for forty-two years. Recognizing that inflation would diminish the value of the award each year, the jury increased the annual award by five percent, *compounded* annually. The total amount of the payments was $135,218.68. Discounted to present value using five percent simple interest, the judgment would be $60,611.31. Discounted to present value using five

---

[2] *In re Chicago, M, St P & P R Co*, 791 F2d 524, 529 (CA 7, 1986).

percent interest, compounded annually, the judgment
would be $42,000.[3] The difference between the two
judgments is $18,611.31, or thirty-one percent. Thus,
the difference between simple and compound interest
is not a mere detail in this case, but an increase in the
defendant's liability of thirty-one percent. Using the
simple interest approach advocated by the majority,
the defendant would have to pay an additional thirty-
one percent on his judgment. It goes without saying
that the Court's decision will affect every personal
injury award for future damages.

No principled reason exists to give the plaintiff an
additional thirty-one percent, when the plaintiff has
the opportunity to earn compound interest on that
judgment through the use of common, everyday
investments such as certificates of deposit or pass-
book savings accounts.

The common-law rule requiring simple interest can
be traced to *Rivers v Bay City Traction & Electric
Co.*[4] In *Rivers*, the plaintiff was awarded damages
equal to the expected lifetime earnings of her hus-
band, who had been killed in a railroad accident. The
Court was presented with how to reduce the dece-
dent's total lifetime earnings to a present lump-sum
value. Recognizing that it would be inequitable to sim-
ply award the plaintiff the total amount of the future
wages, the Court concluded that the future damages

---

[3] By increasing the judgment by five percent compounded annually to
account for inflation, and then reducing it by five percent compounded
annually to account for the time value of money, the result is that the
present value is the equivalent of $1,000 a year for forty-two years, pres-
ently payable and undiscounted.

[4] 164 Mich 696; 128 NW 254 (1910).

should be reduced to a present value at a rate of five percent interest.

Although the *Rivers* Court explained its holding in terms of simple interest, i.e., divide the first year's lost wages by 1.05, the second year's by 1.10, etc., the Court also approved of the use of compound interest.

> With variations depending upon the interest rate, and upon whether simple or *compound interest* may be received, it is, so far as we are informed, the rule in common use for determining the sum of money required to secure a given annuity for any number of years, and the present worth of a sum payable in the future.[5] [Emphasis added.]

Thus, even in 1910, the Court contemplated the use of compound interest in the context of reducing future judgments to a present value. The *Rivers* opinion appears to indicate that if the plaintiff was earning compound interest on her investment, the judgment could be discounted using a compounded interest rate. At that time, the Court rejected the defendant's argument that the plaintiff could earn compound interest, citing risks and contingencies. Because the *Rivers* case predated the Federal Deposit Insurance Corporation,[6] depositing money in a bank in 1910 certainly entailed a minor risk of default. Today, however, bank deposits are insured up to $100,000 an account, thus removing any real risk. Consequently, the prospect of earning compound interest is no longer contingent or risky.

---

[5] *Id.* at 710.

[6] 12 USC 1811.

II

As I understand the majority, the primary objection to using compound interest is not that simple interest is more equitable, but that the Legislature, by not disrupting the existing common-law scheme, intended to maintain the "status quo."

When this Court is interpreting a statute, its singular role is to give effect to the intent of the Legislature.[7] But where this Court is interpreting the common law, its function is different. The Michigan Constitution provides that the common law remains in force until "changed, amended or repealed."[8] "Amendment" and "repeal" allude to legislative acts, while "change" contemplates judicial change.[9] The constitutional authority of this Court to change the common law is unquestioned, and when faced with judge-made law, this Court "has not disregarded its corrective responsibility in the proper case."[10] As we noted in *People v Aaron*,[11]

> "[I]t is for this Court to decide whether a common-law rule shall be retained unless the Legislature states a rule that is inconsistent with or precludes a change in the common-law rule."

Obviously, the Legislature has not stated a rule that is inconsistent with the adoption of compound interest because it has never explicitly stated a preference

---

[7] *Drouillard v Stroh Brewery Co*, 449 Mich 293, 302; 536 NW2d 530 (1995).

[8] Const 1963, art 3, § 7; *People v Stevenson*, 416 Mich 383; 331 NW2d 143 (1982).

[9] *Myers v Genesee Co Auditor*, 375 Mich 1, 7; 133 NW2d 190 (1965).

[10] *Placek v Sterling Heights*, 405 Mich 638, 657; 275 NW2d 511 (1979).

[11] 409 Mich 672, 723, n 112; 299 NW2d 304 (1980), quoting *Gruskin v Fisher*, 405 Mich 51, 58; 273 NW2d 893 (1979).

for either compound or simple interest in the area of future damages.

Although *People v Aaron* was a criminal case, the situation then before the Court is analogous to the present case. In *Aaron*, the Court addressed the status of the common-law felony-murder rule.[12] Although the Legislature had criminalized the crime of murder, "murder" was not defined in the statute.[13] The Court referred to the common law to define murder.[14] Therefore, by criminalizing "murder," the Legislature had indicated its awareness, and apparent acceptance, of the common-law doctrine of felony murder. So, as in the present case, the Court was faced with a statute that left certain definitions to the common law. In *Aaron*, it was the definition of "murder," and in this case, it is the definition of "interest." Finding the felony-murder doctrine unjust, this Court resolved to "exercise our role in the development of the common law by abrogating the common-law felony-murder rule."[15] Accordingly, the Court exercised its inherent authority to amend the common law to reflect modern perceptions of justice, despite the Legislature's apparent acceptance of the existing common-law rule.

This Court has also modified the common law in civil cases when the ends of justice so required.[16]

---

[12] *Aaron, supra* at 723.

[13] MCL 750.317;  MSA 28.549 ("All other kinds of murder shall be murder of the second [2nd] degree").

[14] *Aaron, supra* at 715.

[15] *Id.* at 733.

[16] *Placek v Sterling Heights*, n 10 *supra* (comparative negligence); *Womack v Buchhorn*, 384 Mich 718; 187 NW2d 218 (1971) (negligently inflicted prenatal injury); *Felgner v Anderson*, 375 Mich 23; 133 NW2d 136 (1965) (assumption of risk); *Parker v Port Huron Hosp*, 361 Mich 1; 105

In *Placek v Sterling Heights*, the Court acknowledged that in some situations we may be in a better position than the Legislature to propose a change in the common law.[17] Because this case involves the computation of the present value of future judgments, it is a matter of practice and procedure in the courts, which makes it particularly within the domain of this Court.[18]

Because the rule of *Rivers, supra*, overstates the defendant's liability by understating the earning power of money, and because this Court is authorized to change the common law, I would affirm the decision of the Court of Appeals.

RILEY and WEAVER, JJ., concurred with BRICKLEY, J.

---

NW2d 1 (1960) (charitable immunity); *Montgomery v Stephan*, 359 Mich 33; 101 NW2d 227 (1960) (common-law disability prohibiting a wife from suing for the loss of her husband's consortium); *Spence v Three Rivers Builders & Masonry Supply, Inc*, 353 Mich 120; 90 NW2d 873 (1958) (privity requirement in actions for breach of an implied warranty); *Bricker v Green*, 313 Mich 218; 21 NW2d 105 (1946) (doctrine of imputed negligence).

[17] N 10 *supra* at 657-660.

[18] Const 1963, art 6, § 5.