**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:
Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED JULY 23, 2012

S T A T E   O F   M I C H I G A N

SUPREME COURT

MYRIAM VELEZ,

       Plaintiff-Appellee/Cross-
       Appellant,

v                              No. 138952

MARTIN TUMA, M.D.,

       Defendant-Appellant/Cross-
       Appellee.

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

In this joint and several liability medical malpractice case, defendant, Dr. Martin Tuma, seeks a reduction of the final judgment rendered against him by the amount of his codefendants' settlement. This case therefore concerns the interplay between the common-law setoff rule, whereby a jointly and severally liable tortfeasor is entitled to a setoff from any adverse verdict in the amount of the cotortfeasor's settlement, and the noneconomic damages cap of MCL 600.1483, which limits a medical malpractice plaintiff's recovery of noneconomic damages. Specifically, we must decide whether the

Legislature intended to abrogate the common-law setoff rule and, if not, the order in which the setoff rule and the noneconomic damages cap of MCL 600.1483 apply to a jury's verdict. Both the circuit court and Court of Appeals held, pursuant to *Markley v Oak Health Care Investors of Coldwater, Inc*,[1] that the common-law setoff rule applies and that the setoff must be applied to the jury's verdict *before* application of the cap on noneconomic damages.

We agree that *Markley* was correctly decided and thus hold that the Legislature did not abolish the common-law setoff rule in the context of joint and several liability medical malpractice cases. We affirm the Court of Appeals in this regard and further clarify that where the Legislature has retained principles of joint and several liability, the common-law setoff rule applies. The lower courts' sequencing of the setoff and the noneconomic damages cap, however, results in an outcome contrary to the Legislature's requirement that medical malpractice plaintiffs "shall not" recover more noneconomic losses than the amount determined by MCL 600.1483. Rather, the Legislature has exercised its authority to limit a medical malpractice plaintiff's recovery by capping noneconomic losses and requiring the reduction of economic losses by the amounts paid by collateral sources. Because application of the setoff to the jury's verdict can result in a recovery beyond those statutorily mandated damages limitations, we further hold that a joint tortfeasor's settlement must be set off from the final judgment after application of the noneconomic damages cap of MCL 600.1483, as well as the collateral source rule.

---

[1] *Markley v Oak Health Care Investors of Coldwater, Inc*, 255 Mich App 245; 660 NW2d 344 (2003).

2

We therefore reverse that portion of the Court of Appeals' judgment affirming the circuit court's application of the common-law setoff rule.

## I. FACTS AND PROCEDURAL HISTORY

In September 2001, plaintiff, Myriam Velez, filed suit against Detroit Receiving Hospital, Harper Hospital, and Drs. Lawrence Schwartz and Martin Tuma, alleging that their failure to timely operate on her leg necessitated its amputation below the knee. After plaintiff filed her notice of intent to sue, the hospitals entered into a settlement agreement with plaintiff in which those defendants paid plaintiff a total of $195,000. After the settlement, plaintiff's lawsuit was dismissed by stipulation but without prejudice with respect to Tuma, who was not a part of the settlement agreement.

Plaintiff then filed a new complaint against defendant Tuma in January 2004, raising the same allegations against defendant.[2] After a four-day jury trial, the jury found defendant to be professionally negligent and returned a $1,524,831.86 verdict in plaintiff's favor. As required by MCL 600.1483(2), the jury itemized the verdict, separating it into past and future economic and noneconomic damages. The jury awarded plaintiff a total of $124,831.86 in economic damages and a total of $1.4 million in noneconomic damages.[3]

---

[2] Throughout the rest of this opinion, "defendant" refers to Tuma only, while "codefedants" refers to the hospital defendants that settled with plaintiff.

[3] MCL 600.1483(3) defines "noneconomic loss" as "damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss."

Before the circuit court entered a final judgment in plaintiff's favor, defendant requested that the circuit court apply the noneconomic damages cap to the jury's verdict and then subtract codefendants' $195,000 settlement from the final judgment. Plaintiff objected, relying on *Markley*, and argued that the circuit court was required to subtract codefendants' settlement from the jury's unadjusted "verdict."[4] The circuit court denied defendant's request, citing *Markley* for the proposition that codefendants' settlement had to be applied to the jury's unadjusted "verdict," as opposed to the "judgment." The court agreed with plaintiff's interpretation of *Markley*:

> The question to the Court is whether or not I believe that Markley . . . stand[s] for the proposition that the verdict is subject to the set off. Or whether the judgment is subject to the set off.
>
> The Court believes that Markley says verdict. I don't know what they meant, but I'll take it literally and we will apply it to the verdict. I will absolutely concur that that will result in a plaintiff receiving more money than the cap amount.

Thereafter, the circuit court entered a judgment awarding plaintiff $394,200, which is the amount of the noneconomic damages cap in this case.[5] To calculate this amount, the circuit court first subtracted codefendants' $195,000 settlement from the jury's total unadjusted verdict of $1,524,831. Because plaintiff's economic damages had been satisfied through collateral sources, the circuit court applied the collateral source

---

[4] *Markley*, 255 Mich App at 250-251.

[5] There is no dispute between the parties that plaintiff's noneconomic damages are capped at $394,200.

4

rule and reduced plaintiff's economic damages to zero.[6]  Finally, the circuit court reduced the remaining noneconomic damages to the amount of the statutory cap on noneconomic damages, $394,200.  The circuit court entered a final judgment for plaintiff in this amount.[7]  Including the prior settlement amount, plaintiff's total recovery was $589,200.

In the Court of Appeals, defendant argued that the circuit court had erred by applying the setoff to the jury's unadjusted verdict rather than to the amount of the final judgment after applying the noneconomic damages cap.  The Court of Appeals, however, affirmed the circuit court's decision to apply the setoff to the unadjusted verdict.[8]  The

---

[6] In medical malpractice cases, the collateral source rule requires a circuit court to reduce a jury's award of economic damages by the amount already paid by collateral sources, such as insurers or other providers.  MCL 600.6303.  There is no dispute that plaintiff's total economic damages are eliminated by the collateral source rule because plaintiff has received, and will continue to receive, supplemental security income benefits from the Social Security Administration.

[7] The circuit court's calculation can be demonstrated as follows:

| Total Jury Verdict | $1,524,831.86 |
|---|---|
| Settlement Setoff | - $195,000 |
| Post Setoff Verdict | $1,329,831.86 |
| Economic Damages | $0 due to reduction for collateral sources |
| Noneconomic Damages | $394,200 due to statutory cap on noneconomic damages |
| **Final Judgment** | **$394,200** |

[8] *Velez v Tuma*, 283 Mich App 396; 770 NW2d 89 (2009).

Court first reasoned that the common-law setoff rule remained applicable in medical malpractice cases involving joint and several tortfeasors and that the rule should be applied so that a plaintiff will not be overcompensated for his or her actual loss. Turning to the question whether the setoff is to be applied to a jury's verdict or the final judgment after application of the noneconomic damages cap, the appeals panel could "discern no reason why the same principles that applied to the [now repealed] statutory right to setoffs [wherein prior settlements were set off against the verdict] should not apply to the common-law right to setoffs . . . ."[9] Without addressing the language of the statute capping noneconomic damages, the Court of Appeals reasoned that "[i]n cases where joint and several liability is imposed, the trier of fact's determination of damages sets the limit regarding the amount a plaintiff can recover for his or her loss."[10] The Court thus concluded "that the application of the setoff rule to the jury verdict [which comprises a plaintiff's actual loss], rather than the final judgment, is proper."[11]

Defendant applied for leave to appeal in this Court, and plaintiff filed a cross-appeal. Initially, we denied both applications,[12] but we later granted defendant's motion for reconsideration and granted leave to appeal, limited to the issue "whether the Court of Appeals correctly held that the setoff amount in this case was properly set off against the

---

[9] *Id*. at 412.

[10] *Id.* at 413.

[11] *Id*.

[12] *Velez v Tuma*, 488 Mich 903 (2010). Before our initial denial, we had held the case in abeyance for the resolution of issues not involved in this appeal. *Velez v Tuma*, 775 NW2d 146 (Mich, 2009).

jury verdict, before application of the noneconomic damages cap of MCL 600.1483 and calculation of the final judgment."[13]   After hearing oral argument on that limited issue, we sua sponte reconsidered plaintiff's cross-application and granted leave to cross-appeal to consider "whether *Markley* . . . correctly decided that the common-law setoff rule applies in medical malpractice actions where joint and several liability is imposed."[14]

## II.  STANDARD OF REVIEW

The questions presented in these appeals are questions of law that we review de novo.[15]   To the extent we must interpret the meaning of applicable statutes, our review is also de novo.[16]

## III.  EXISTENCE OF COMMON-LAW SETOFF RULE

Plaintiff argues that the Legislature abrogated the common-law setoff rule and thus any setoff of codefendants' settlement award is not warranted.  In support, plaintiff posits that in 1995 PA 161, the Legislature clearly intended to abrogate the common-law rule when it repealed former MCL 600.2925d(b), as added by 1974 PA 318, which had codified the setoff rule and provided that a settlement "reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release . . . ."

---

[13] *Velez v Tuma (On Reconsideration)*, 489 Mich 956 (2011).   With respect to defendant's remaining issue, leave to appeal is denied, because we are not persuaded that the question presented should be reviewed by the Court.

[14] *Velez v Tuma*, 491 Mich 873 (2012).

[15] *Kaiser v Allen*, 480 Mich 31, 35; 746 NW2d 92 (2008).

[16] *Id*.

7

The common law remains in force until "changed, amended or repealed."[17] Whether the Legislature has abrogated, amended, or preempted the common law is a question of legislative intent.[18] We will not lightly presume that the Legislature has abrogated the common law.[19] Nor will we will extend a statute by implication to abrogate established rules of common law.[20] "Rather, the Legislature 'should speak in no uncertain terms' when it exercises its authority to modify the common law."[21]

We cannot conclude that the Legislature intended to abolish the common-law setoff rule in the context of joint and several liability medical malpractice cases. While the pertinent statutes are silent with respect to the application of the common-law setoff rule, we cannot agree with plaintiff that the repeal of the statutory setoff, former MCL 600.2925d(b), by 1995 PA 161 demonstrates a clear intent to abrogate the common-law rule. Plaintiff's argument ignores the fact that the repeal of former MCL 600.2925d(b) was but one part of comprehensive tort-reform legislation and that there is no conflict between the common-law rule and the current legislation that would prevent the setoff's application. Those 1995 reforms abolished joint and several liability in most contexts

---

[17] Const 1963, art 3, § 7.

[18] *Wold Architects & Engineers v Strat*, 474 Mich 223, 233; 713 NW2d 750 (2006).

[19] *Id*.

[20] *Rusinek v Schultz, Snyder & Steele Lumber Co*, 411 Mich 502, 507-508; 309 NW2d 163 (1981).

[21] *Dawe v Dr Reuven Bar-Levav & Assoc, PC*, 485 Mich 20, 28; 780 NW2d 272 (2010), quoting *Hoerstman Gen Contracting, Inc v Hahn*, 474 Mich 66, 74; 711 NW2d 340 (2006).

and created an allocation-of-fault system in which each tortfeasor is liable only for the portion of the total damages that reflects that tortfeasor's percentage of fault.[22] Because a system of several liability already incorporates the fault of *all* tortfeasors in establishing every individual tortfeasor's proportion of fault, there is no danger that the plaintiff will be overcompensated for the injury by the failure to set off the amount of another tortfeasor's settlement.

The same comprehensive tort-reform legislation, however, also specifically retained "joint and several liability" in medical malpractice cases under MCL 600.6304(6)(a) where, as in the present case, the plaintiff is determined to be without fault.[23] For reasons we explain, the Legislature's unambiguous intent to maintain joint and several liability in this context also evinces a clear intent to retain the common-law setoff rule in joint and several liability medical malpractice cases.

The term "joint and several" liability, as used in MCL 600.6304(6)(a), is a technical legal term. It has a long-acquired meaning that is well established in our jurisprudence: "[]Where multiple tortfeasors caused a single or indivisible injury, the injured party [may] either sue all tortfeasors jointly or he [may] sue any individual tortfeasor severally, and each individual tortfeasor [is] liable for the entire judgment . . . ."[24] Consistent with

---

[22] 1995 PA 161 added MCL 600.2956 to the Revised Judicature Act to provide that "the liability of each defendant for damages is several only and is not joint."

[23] MCL 600.6304(6)(a) states that "joint and several" liability applies to a medical malpractice claim as long as the plaintiff is determined to be without fault.

[24] *Gerling Konzern Allgemeine Versicherungs AG v Lawson*, 472 Mich 44, 49; 693 NW2d 149 (2005); see also *Maddux v Donaldson*, 362 Mich 425, 433; 108 NW2d 33 (1961); *Verhoeks v Gillivan*, 244 Mich 367, 371; 221 NW 287 (1928).

9

our rules of construction, "technical words and phrases, and such as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning."[25] The Legislature's use of the term "joint and several" liability, therefore, indicates a plain intent to adopt that term's technical legal meaning.

Inherent in the meaning of joint and several liability is the concept that a plaintiff's recovery is limited to one compensation for the single injury.[26] Because in some instances a jointly and severally liable tortfeasor settles before trial, the common-law setoff rule is necessary to ensure that the plaintiff does not recover more than a single recovery for the single injury. The common-law setoff rule entitles the remaining tortfeasors, who are still liable for the *entire* injury, to set off the amount of the cotortfeasor's settlement from any verdict rendered against them.[27] By reiterating that liability in most medical malpractice cases is joint and several, the Legislature thus retained the common-law setoff rule. When understood in this way, the purpose of the

---

[25] MCL 8.3a.

[26] *Lawson*, 472 Mich at 49 ("[Under principles of joint and several liability,] each individual tortfeasor was liable for the entire judgment, although the injured party was entitled to full compensation only once."); *Verhoeks*, 244 Mich at 371 ("'The injured party has the right to pursue [tortfeasors] jointly or severally at his election, and recover separate judgments; but, the injury being single, he may recover but one compensation.'") (citation omitted).

[27] *Thick v Lapeer Metal Prod*, 419 Mich 342, 348 n 1; 353 NW2d 464 (1984) ("[W]here a negligence action is brought against joint tortfeasors, and one alleged tortfeasor agrees to settle his potential liability by paying a lump sum in exchange for a release, and a judgment is subsequently entered against the non-settling tortfeasor, the judgment is reduced *pro tanto* by the settlement amount.").

Legislature's repeal of the statutory setoff was not to abrogate the common-law setoff rule, but to acknowledge that a setoff does not apply in actions that involve several liability only.

The Court of Appeals decision in *Markley* is consistent with this reasoning. There, the defendant sought a setoff against a jury verdict in the amount of the joint codefendant's settlement. The Court of Appeals rejected the circuit court's reasoning that the Legislature's repeal of former MCL 600.2925d(b) was intended to abrogate any common-law right to a setoff. Instead, the appeals court reasoned:

> [I]t is logical to conclude that common-law setoff in joint and several liability cases remained the law, where the new legislation was silent, where application of the common-law rule does not conflict with any current statutes concerning tort law, and where a plaintiff is conceivably overcompensated for its injury should the rule not be applied. Considering the general nature and tone of tort reform legislation, we conclude that the Legislature did not intend to allow recovery greater than the actual loss in joint and several liability cases when it deleted the relevant portion of [MCL 600.2925d], but instead intended that common-law principles limiting a recovery to the actual loss would remain intact.[28]

Thus, the Court of Appeals held that "the principle of one recovery and the common-law rule of setoff, in the context of joint and several liability cases, continue to be the law in Michigan."[29]

---

[28] *Markley*, 255 Mich App at 256-257.

[29] *Id.* at 257. We disagree with plaintiff's characterization of *Markley* as "reviving" the common-law setoff rule. To the contrary, *Markley*'s reasoning, in our understanding, is consistent with our reasoning that the Legislature intended to preserve setoffs of a joint tortfeasor's settlement because the Legislature expressly retained joint and several liability in the medical malpractice context.

11

After *Markley*, this Court in *Kaiser v Allen*[30] considered whether principles of joint and several liability and the common-law setoff rule applied in vehicle-owner vicarious-liability cases. After the jury returned a verdict in the plaintiff's favor, the defendant sought a setoff in the amount of his codefendant's settlement, which would reduce the plaintiff's award to zero. Because there can be no allocation of fault in vicarious-liability cases and there exists no amount of damages that belong to the vehicle owner separately from the negligent operator, we held that "[t]he tort-reform statutes do not apply to . . . vehicle-owner vicarious-liability cases . . . . Therefore, the common-law setoff rule remains the law in Michigan for vehicle-owner vicarious-liability cases."[31]

While the present case is factually dissimilar from *Kaiser*, the principles espoused in *Kaiser* nonetheless support our interpretation of the tort-reform statutes; mainly, that where the Legislature has retained joint and several liability, the common-law setoff rule remains intact. Indeed, as the Court of Appeals acknowledged in *Markley*, we are aware of no conflicting provision that would prevent the setoff's application, and plaintiff has identified none. Given our reasoning and our decision in *Kaiser*, we cannot hold that *Markley* was wrongly decided, as plaintiff urges. Accordingly, we hold that the common-law setoff rule remains the law in joint and several liability medical malpractice cases. We further clarify, consistent with our decision in *Kaiser*, that where the Legislature has specifically retained the technical common-law term "joint and several liability," the common-law setoff rule remains applicable.

---

[30] *Kaiser*, 480 Mich 31.

[31] *Id*. at 36.

## IV. APPLICATION OF COMMON-LAW SETOFF RULE

Our conclusion that the common-law setoff rule remains applicable in joint and several liability cases does not end our analysis. Rather, we must address the issue of the sequence in which to apply the common-law setoff rule and the statutory cap on noneconomic damages to the jury's verdict. We therefore examine the interplay between the common-law rule and MCL 600.1483. We are cognizant that we are the stewards of the common law and that the Legislature is presumed to be aware of the common law when enacting legislation.[32] Our function in construing statutory language is to effectuate the Legislature's intent.[33] Plain and clear language is the best indicator of that intent, and such statutory language must be enforced as written.[34] Further, a statute in derogation of the common law will not be construed to abrogate the common law by implication, but if there is any doubt, the statute is to be given the effect that makes the least change in the common law.[35]

We agree with defendant that the lower courts erred by applying the setoff before applying the noneconomic damages cap, thereby allowing plaintiff to recover a total judgment beyond what Michigan law permits. While the Court of Appeals properly recognized that the common-law setoff rule applies in this case and is necessary to ensure

---

[32] *Henry v Dow Chem Co*, 473 Mich 63, 83; 701 NW2d 684 (2005); *Nation v W D E Electric Co*, 454 Mich 489, 494; 563 NW2d 233 (1997).

[33] *Nation*, 454 Mich at 494.

[34] *Driver v Naini*, 490 Mich 239, 247 n 24; 802 NW2d 311 (2011).

[35] *Nation*, 454 Mich at 494.

that a plaintiff is not overcompensated for his or her injury, the Court erred by failing to address how the mandatory limitation on noneconomic damages affects application of the setoff.

As noted, MCL 600.1483(1) limits a plaintiff's damages for "noneconomic losses recoverable" and provides, in part:

> In an action for damages alleging medical malpractice by or against a person or party, the *total amount of damages for noneconomic loss recoverable* by all plaintiffs, resulting from the negligence of all defendants, *shall not exceed* $[394,200] . . . .[36]

This language mandates an absolute cap on all available noneconomic losses: a medical malpractice plaintiff's "total amount" of noneconomic damages "recoverable" "shall not exceed" the statutory cap. Use of the term "recoverable," giving it its plain meaning, denotes noneconomic losses that are capable of being recovered, which necessarily includes recovery through settlements, jury verdicts, or arbitration.[37] Because the term "total" modifies "amount of damages for noneconomic loss recoverable," it makes clear that all such sums recovered "shall not exceed" the cap. The Legislature, through the unambiguous language of MCL 600.1483(1), has then determined that a plaintiff's actual

---

[36] Emphasis added. Although there is no dispute regarding the cap amount in this case, the amount of the cap is adjustable "at the end of each calendar year to reflect the cumulative annual percentage change in the consumer price index." MCL 600.1483(4).

[37] In the absence of a statutory definition, we may rely on dictionary definitions. *Cox v Flint Bd of Hosp Managers*, 467 Mich 1, 18; 651 NW2d 356 (2002). Black's Law Dictionary (9th ed) broadly defines "recoverable" to mean "[c]apable of being recovered." Justice HATHAWAY, however, claims that we have added language to MCL 600.1483 because the provision "makes no reference to settlements at all." *Post* at 9. This interpretation ignores entirely the breadth of the definition of the term "recoverable."

loss—and thus full compensation—for noneconomic losses caused by the single injury may be less than what a jury awards and may not in total exceed the statutory limit.[38]

Despite the unequivocal language of MCL 600.1483 limiting noneconomic damages, the statute is silent with respect to when the cap is to be applied both generally and in relation to the common-law setoff.[39] And while the common-law setoff rule is

---

[38] Justice HATHAWAY mischaracterizes MCL 600.1483, and other provisions limiting damages, as measures that "preclude a plaintiff from receiving overcompensation," *post* at 5, and opines that a "court must determine whether the plaintiff is being overcompensated," *post* at 6. As we have explained, however, by automatically limiting a verdict of noneconomic damages to the amount of the cap, MCL 600.1483 sets the total amount of compensation allowed. Because the cap represents a predetermined legislative policy limitation on a plaintiff's total compensation for noneconomic injuries, it forms the basis of determining to what extent a recovery for noneconomic damages *necessarily* represents overcompensation, and a court cannot exceed that predetermined limitation on compensation.

[39] MCL 600.6306 directs a trial court to make certain deductions from a jury's award of damages before entering a final judgment, but it does not provide guidance with respect to application of the cap or the common-law setoff rule. MCL 600.6306 states in relevant part:

(1) After a verdict rendered by a trier of fact in favor of a plaintiff, an order of judgment shall be entered by the court. Subject to [MCL 600.2959], the order of judgment shall be entered against each defendant, including a third-party defendant, in the following order and in the following judgment amounts:

(a) All past economic damages, less collateral source payments as provided for in [MCL 600.6303].

(b) All past noneconomic damages.

(c) All future economic damages, less medical and other health care costs, and less collateral source payments determined to be collectible under [MCL 600.6303(5)] reduced to gross present cash value.

(d) All future medical and other health care costs reduced to gross present cash value.

15

traditionally applied to a jury's verdict, we do not view the statutory silence or the traditional application of the common-law setoff to be dispositive of the sequencing issue. Rather, the clear legislative directive of MCL 600.1483, when considered in juxtaposition with the purpose of the common-law setoff rule, provides the necessary guidance. Because a medical malpractice plaintiff cannot by operation of law recover more noneconomic damages than the statutory limit, it follows that a plaintiff's full recovery of noneconomic losses for the single injury—assuming the jury verdict exceeds the cap—is legislatively predetermined to be limited to the statutory amount. If a plaintiff has been partially compensated through a prior settlement from a jointly and severally liable tortfeasor, then the common-law setoff rule, consistent with its purpose and the statute, must be applied to ensure that the plaintiff is not compensated beyond statutorily permissible limits. To achieve this result, the settlement must be subtracted from a jury verdict *after* application of the noneconomic damages cap, as well as the collateral source rule; otherwise, the plaintiff could recover more than his or her full compensation, that is, the plaintiff could recover the settlement amount, plus the amount of the cap and the amount of statutorily permissible economic damages, if any.[40]

---

(e) All future noneconomic damages reduced to gross present cash value.

[40] Justice HATHAWAY contends that our application of the setoff creates a "new rule that bears little resemblance to the common-law setoff rule or its underlying purpose," *post* at 8, and that our failure to recognize the verdict as the measure of full compensation "disregards the obvious," *post* at 7. However, *before* the Legislature's creation of the cap on noneconomic damages, there was no need for the common law to make the distinction that we recognize. We have not, therefore, ignored that the setoff has traditionally been applied to the verdict. Rather, consistent with our jurisprudence, we have applied both the common-law rule and the statute in the manner that best gives effect to the purposes

16

Yet this is exactly what the lower courts did in this case. Neither the circuit court nor the Court of Appeals recognized that the Legislature has statutorily limited a medical malpractice plaintiff's recovery and that a setoff must be applied to ensure that the plaintiff does not recover an amount more than that which the Legislature has fixed by statute. Instead, the lower courts ignored the mandate of MCL 600.1483 and measured plaintiff's "actual loss," or full compensation, as the jury's verdict. This erroneous reasoning led to the legally incorrect conclusion that plaintiff's recovery for her single injury could not exceed the amount of the *verdict*, thereby justifying a setoff from the jury's verdict, rather than the judgment, after application of the noneconomic cap and collateral source rule. By applying the setoff directly to the unadjusted verdict, the lower courts thus subverted both the clear directive of MCL 600.1483—that medical malpractice plaintiffs not recover noneconomic losses beyond the legislatively determined amount—and the purpose of the common-law setoff rule—to ensure that overcompensation does not occur. Under the lower courts' application of the cap and common-law setoff rule, plaintiff recovered $195,000 more than her actual loss as determined by the Legislature. Because plaintiff's economic losses were zero, because of collateral sources, the remaining final judgment of $394,200 after the cap was necessarily composed of only noneconomic losses. Plaintiff's total recovery from all joint

---

of both. See, e.g., *People v Nowack*, 462 Mich 392, 406; 614 NW2d 78 (2000) (noting that the common law is adopted into our jurisprudence to the extent that it is consistent with our state and federal constitutions and statutes). Consequently, it is the dissent's interpretation that fails to effectuate both the purpose of the statute and the common-law rule because, as the dissent does not dispute, its interpretation would allow a medical malpractice plaintiff to recover more than the statutorily limited amount.

tortfeasors, however, was $589,200—which is $195,000 more than that allowed by the collateral source rule and the cap on noneconomic damages.

Plaintiff would have us affirm the lower courts' erroneous application of the cap and rule, but her argument fails due to similar shortcomings. Like the Court of Appeals, plaintiff and Justice HATHAWAY's dissent assert that the measure of her actual losses for purposes of the setoff is the jury's verdict and that she can only be overcompensated for purposes of the common-law setoff rule if she receives more than the jury's verdict. Plaintiff cites both *Kaiser* and *Markley* for the proposition that the unadjusted jury verdict is the measure of the one full recovery to which plaintiff is entitled, but these cases are simply inapposite. *Kaiser* involved a vehicle owner's vicarious liability for those who drive the owner's vehicle, and there is no similar damages cap in the context of vehicle-owner vicarious-liability cases. It was not necessary for *Kaiser* to address the interaction between a statutory limitation on damages and the common-law setoff and, thus, distinguish between "judgments" and "jury verdicts" as the measure of the one full recovery to which a plaintiff is entitled. *Markley* also does not support plaintiff's position. Indeed, *Markley* itself acknowledged that "there [was] no reason to address the damage cap" when applying the setoff rule.[41] Like in *Kaiser*, it was unnecessary for *Markley* to distinguish between "judgments" and "jury verdicts" as the measure of actual loss. Plaintiff also cites our decision in *Rittenhouse v Erhart*[42] for the same proposition,

---

[41] *Markley*, 255 Mich App at 258.

[42] *Rittenhouse v Erhart*, 424 Mich 166; 380 NW2d 440 (1985).

18

but *Rittenhouse* is likewise unhelpful because it did not address the interaction between the damages cap and the common-law setoff rule.[43]

Accordingly, we hold that where principles of joint and several liability apply in a medical malpractice case and a codefendant has settled a plaintiff's claim before trial, a circuit court must first apply to the jury's verdict the noneconomic damages cap, as well as any other statutorily required adjustments, before reducing the award by the amount of the codefendant's settlement. Here, plaintiff received a settlement from codefendants in the amount of $195,000. At a later trial against defendant, the jury returned a verdict for

---

[43] As additional support, plaintiff and Justice HATHAWAY argue that MCL 600.1483 does not limit the total amount of noneconomic damages plaintiff may recover because MCL 600.1483(1) only applies to jury awards, not settlements. Specifically, the dissent posits that MCL 600.1483(1) applies only to jury awards because the language of MCL 600.1483(2), which requires juries "awarding damages" to "itemize damages," refers only to jury awards. This conclusion does not logically follow when the subsections are read together because MCL 600.1483(1) makes no reference to a jury award, but uses the broader phrase "the total amount of damages for noneconomic loss recoverable . . . ." Justice HATHAWAY further asserts that the Legislature only intended jury awards, not settlements, to be reduced by the noneconomic damages cap because MCL 600.6304(5) is silent with respect to any reduction by reason of a settlement. *Post* at 10. That provision requires a circuit court to reduce an excessive "award of damages" to the amount of the noneconomic damages cap. This silence, however, does not preclude a court from applying the common-law setoff rule *after* applying the noneconomic damages cap to the jury verdict. Finally, these arguments are unavailing because to interpret the noneconomic damages cap as applying only to jury awards and not settlements would render nugatory the term "recoverable" in MCL 600.1483(1), which as we have explained does not delimit the manner in which recovery is obtained. Plaintiff and the dissent's construction is one we cannot adopt because we "'must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute . . . nugatory.'" *Jenkins v Patel*, 471 Mich 158, 167; 684 NW2d 346 (2004) (citation omitted). Justice HATHAWAY, like plaintiff, simply neglects to consider that the Legislature did not intend a plaintiff to recover noneconomic damages greater than that allowed by the statute and that plaintiff's recovery of noneconomic damages is, in effect, set by law.

19

plaintiff for $1,524,831.86. Given our holding, it was error for the lower courts to apply the setoff against the jury's verdict. Rather, the proper order of operation was to first apply both the collateral source rule and the noneconomic damages cap to arrive at the final judgment, which is plaintiff's full compensation for her injury as determined by the Legislature.[44] Because plaintiff has already received partial compensation for that injury, application of the common-law setoff rule requires that codefendants' settlement be subtracted from the final judgment so that plaintiff does not receive more than a single

---

[44] Justice CAVANAGH criticizes this application of the setoff rule because it "provides defendants with both the benefit of the damages cap and the further reduction of the common-law setoff." *Post* at 2. Yet this result is exactly what we intend because it is also what the Legislature intends. Had the Legislature intended to preclude this result from inuring to the benefit of a medical malpractice defendant, it could have used a phrase less broad than "total amount of damages for noneconomic loss recoverable" in MCL 600.1483(1) or otherwise prohibited any application of the setoff rule.

20

recovery for her single injury.[45] Consequently, plaintiff is entitled to a judgment against defendant in the amount of $199,200.[46]

This result and our holding are in accord with decisions of other jurisdictions with similar damages-cap statutes. In *Fairfax Hosp Sys, Inc v Nevitt*,[47] the Virginia Supreme

---

[45] By allegedly reducing plaintiff's "noneconomic damages award" by the amount of the settlement, Justice HATHAWAY is concerned that our decision has assumed that the settlement proceeds consisted of noneconomic damages and that this result "ignores the actual agreement of the settling parties." *Post* at 12. These concerns are unfounded. Our holding does not require the reduction of plaintiff's noneconomic damages by the amount of the settlement. Rather, our holding requires a court to subtract the entire amount of the settlement from *whatever* damages remain after applying the relevant statutory adjustments. Nor have we assumed that the settlement in this case was composed solely of noneconomic damages. Indeed, as the dissent admits, the settlement was an aggregate award for all the damages, including economic and noneconomic damages, costs, attorney fees, and interest. As an aggregate award, subtraction of the settlement from the adjusted verdict in this case does not alter the terms of the settling parties' agreement. While collateral sources that exist in this case happened to reduce the economic damages to zero, the order-of-operations rule that we establish today applies to *all* adjusted verdicts, whether they contain only economic damages, only noneconomic damages, or some combination thereof.

[46] This equation can be summarized as follows:

| | |
|---|---|
| Total Jury Verdict | $1,524,831.86 |
| Economic Damages | $124,831.86, reduced to $0 by collateral sources |
| Noneconomic Damages | $1,400,000, reduced to $394,200 due to cap on noneconomic damages |
| Settlement Setoff | - $195,000 |
| **Final Judgment** | **$199,200** |

[47] *Fairfax Hosp Sys, Inc v Nevitt*, 249 Va 591, 599; 457 SE2d 10 (1995) (citation omitted).

Court ruled that the $1 million cap on medical malpractice damages reduces a verdict before any settlements are set off against it: "[W]here there is a verdict by a jury or a judgment by a court against a health care provider for 'injury to . . . a patient' and the total amount recovered in that action and in all settlements related to the medical malpractice injury exceeds one million dollars, the total amount the plaintiff can recover for that injury is one million dollars." Similarly, in *Lockshin v Semsker*,[48] the Maryland Court of Appeals ruled that "any verdict rendered by a jury exceeding the amount of the non-economic damages cap inherently is a verdict in the amount of the cap from the moment it is rendered." The court therefore concluded that "the appropriate order of operations is to apply first the cap to the jury's verdict for non-economic damages, followed by a credit for the joint tortfeasor settlement."[49]

Plaintiff criticizes this position and claims that it requires the itemization of settlements. Plaintiff's position actually causes this perceived harm, however. When a judgment contains both economic and noneconomic damages, a circuit court applying the

---

[48] *Lockshin v Semsker*, 412 Md 257, 283; 987 A2d 18 (2010).

[49] *Id*. Numerous other jurisdictions have also required application of noneconomic damages caps before setting off a settlement so that plaintiffs do not recover more damages than permitted by the applicable law. See *Mayes v Bryan*, 139 Cal App 4th 1075, 1099-1103; 44 Cal Rptr 3d 14 (2006) (holding that the trial court properly applied the noneconomic damages cap, Cal Civ Code 3333.2, first before reducing the judgment by the percentage of fault attributed to the settlement the plaintiff had already recovered because "the plaintiff could not recover more than $ 250,000 in noneconomic damages from all health care providers for one injury,"); *Garhart v Columbia/Healthone, LLC*, 95 P3d 571, 591 (Colo, 2004) (holding that noneconomic damages cap allowing a total recovery of $250,000, Colo Rev Stat 13-64-302, must be applied to a jury's verdict first before allocating fault attributed to a settlement, so that the plaintiff does not recover more than the cap).

setoff to the jury's verdict *before* application of the collateral source rule would have to determine how to allocate the settlement between economic and noneconomic damages. This is a result we cannot condone, not only because it can result in an outcome contrary to the mandate of MCL 600.1483, but also because it could discourage settlements in instances in which there are multiple related defendants.[50] Additionally, in instances like the present, in which the composition of the settlement is unknown, circuit courts would be left to guess at how a settlement should be allocated. Requiring circuit courts to engage in this guesswork, from which a range of potential outcomes could result, unreasonably burdens them with a determination that they are, in the absence of any statutory guidance, ill-prepared to make. Our holding, on the other hand, that a circuit court must subtract the total settlement from the final judgment, creates no need to allocate the settlement proceeds between economic or noneconomic damages before applying the setoff. Rather, the settlement is treated as an aggregate award to be applied against the plaintiff's total actual loss, meaning the final judgment after application of the applicable statutory adjustments.

## V. CONCLUSION

To the extent the Legislature has not abolished principles of joint and several liability, those principles and the common-law setoff rule remain the law in Michigan.

---

[50] Under plaintiff's rule, medical malpractice plaintiffs would have an incentive to structure settlement agreements as entirely economic damages, especially when the plaintiff expects collateral sources to wipe out all economic damages. The settling codefendants, however, might be unwilling to enter into such an agreement, knowing that it could potentially prejudice their associates and potentially sour business relationships.

23

*Markley* reached this same conclusion, and we decline plaintiff's invitation to conclude that *Markley* was wrongly decided. Further, when joint and several liability principles apply in medical malpractice cases, any settlement must be set off from the final judgment after application of the noneconomic damages cap and the collateral source rule. The lower courts erroneously set off codefendants' settlement against the jury's verdict, which resulted in plaintiff receiving $195,000 more for her injury than permitted by law. Accordingly, we reverse the portion of the Court of Appeals' judgment upholding the circuit court's application of the common-law setoff rule and remand to the circuit court for entry of an order reducing the final judgment by $195,000.

Mary Beth Kelly
Robert P. Young, Jr.
Stephen J. Markman (except for the
    fourth sentence of the first
    paragraph on page 8)
Brian K. Zahra

24

# STATE OF MICHIGAN

# SUPREME COURT

MYRIAM VELEZ,

        Plaintiff-Appellee/Cross-
        Appellant,

v                                  No. 138952

MARTIN TUMA, M.D.,

        Defendant-Appellant/Cross-
        Appellee.

_____

MARKMAN, J. (*concurring*).

I concur in the majority opinion with the exception of the majority's statement that "we will [not] extend a statute by implication to abrogate established rules of common law." *Ante* at 8. I *do* believe that a statute may by implication abrogate established rules of common law. That is, the Legislature does not have to explicitly state that it is abrogating a common-law right in order for it to abrogate a common-law right. The Legislature's intent to abrogate the common law may be sufficiently clear without its having to explicitly state that this is its intent. A legislative body need not provide a running commentary of the effect of its actions on the common law when its actions will admit of only the most obvious interpretation. The statement is unnecessary to the opinion, and no injury would be done to the opinion were it not there. I join the majority because I believe the Legislature has not, either expressly *or* implicitly, abrogated the

common-law setoff rule in the context of joint and several liability medical malpractice cases.

Stephen J. Markman

STATE OF MICHIGAN

SUPREME COURT

MYRIAM VELEZ,

        Plaintiff-Appellee/Cross-
        Appellant,

v                                     No. 138952

MARTIN TUMA, M.D.,

        Defendant-Appellant/Cross-
        Appellee.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I agree with both the majority and dissenting opinions that the common-law setoff rule applies in the context of joint and several liability medical malpractice cases. There is no indication that the Legislature intended to abrogate the common-law setoff rule when it eliminated the statutory setoff rule in MCL 600.2925d(b).[1] Contrary to plaintiff's argument, in the absence of clear legislative intent to abrogate the common law, "[t]he repeal of a statute revives the common-law rule as it was before the statute was enacted." *People v Reeves*, 448 Mich 1, 8; 528 NW2d 160 (1995).

I would, however, affirm the judgment of the Court of Appeals with respect to how the common-law setoff rule should be applied because, in my view, the panel did not clearly err by holding that the common-law setoff should be applied as it traditionally has

_____

[1] Former MCL 600.2925d(b), as added by 1974 PA 318, was deleted by 1975 PA 161.

been—to the unadjusted jury verdict. To apply the common-law setoff after the operation of the medical malpractice noneconomic-damages cap provides defendants with both the benefit of the damages cap and the further reduction of the common-law setoff. I agree with Justice HATHAWAY that the jury verdict represents the total amount of damages a plaintiff is entitled to recover and that applying the common-law setoff to the unadjusted jury verdict before operation of the damages cap ensures that plaintiff is not overcompensated for a single, indivisible injury. Further, applying the common-law setoff to the unadjusted jury verdict does not impair the protections afforded to a defendant by the medical malpractice damages cap, as the Legislature intended.

Michael F. Cavanagh
Marilyn Kelly

2

STATE OF MICHIGAN

SUPREME COURT

MYRIAM VELEZ,

        Plaintiff-Appellee/Cross-
        Appellant,

v                                No. 138952

MARTIN TUMA, M.D.,

        Defendant-Appellant/Cross-
        Appellee.

_____

HATHAWAY, J. (*dissenting*).

I generally agree with the majority that when a trier of fact determines that a plaintiff in a medical malpractice case is not comparatively negligent, the common-law setoff rule applies. However, I disagree with the manner in which the majority applies this rule because it does so in a fashion that is contrary to the rule's purpose. Because today's decision departs from the common-law setoff rule, I respectfully dissent.

For many years, the rule in this state was that concurrent tortfeasors were held to be jointly and severally liable. Joint and several liability operated to place the full burden of the injustice on a tortfeasor, rather than on the injured party.[1] When a defendant is jointly and severally liable, that defendant is liable for all the injured party's damages,

_____

[1] See *Maddux v Donaldson*, 362 Mich 425, 432-434; 108 NW2d 33 (1961); *Velez v Tuma*, 283 Mich App 396, 409; 770 NW2d 89 (2009); *Bell v Ren-Pharm, Inc*, 269 Mich App 464, 471-472; 713 NW2d 285 (2006).

including damages for injury caused by a codefendant or a nonparty, in order to ensure that an injured party is fully compensated.[2]

A corollary of joint and several liability is the common-law setoff rule.[3] Common-law setoff is grounded in the principle that an injured party is entitled to only one recovery for a single, indivisible injury and precludes an injured party from receiving a double recovery.[4] Thus, historically, when an injured party suffered a single, indivisible injury as a result of the negligent conduct of two or more tortfeasors, any amount paid by a settling defendant was "set off" or subtracted from the verdict awarded by the trier of fact.[5] The common-law application of setoff carried out the purpose of the rule: the injured party was fully compensated, but not overcompensated.[6]

The common-law setoff rule was codified in former MCL 600.2925d by 1974 PA 318 and this statutory version of the setoff rule was applied in the same manner as it was at common law in instances in which the defendants were jointly and severally liable. However, statutory setoff was subsequently eliminated by 1995 PA 161, along with joint and several liability for virtually all tort claims.[7] Because no relevant statute currently addresses setoff, the question arises whether the Legislature intended common-law setoff

---

[2] *Id.*

[3] *Kaiser v Allen*, 480 Mich 31, 41; 746 NW2d 92 (2008) (KELLY, J., concurring).

[4] See *Larabell v Schuknecht*, 308 Mich 419, 423; 14 NW2d 50 (1944).

[5] *Id.*

[6] *Kaiser*, 480 Mich at 39-40.

[7] MCL 600.2956.

2

to apply to the limited categories of tort claims for which joint and several liability was retained.[8]  Although factually dissimilar to this case, *Kaiser v Allen*, 480 Mich 31; 746 NW2d 92 (2008), provides guidance in answering this question.

*Kaiser* addressed the issue of whether the common-law setoff rule applies to claims against owners and operators of motor vehicles when vicarious liability is statutorily imposed.  In holding that the common-law setoff rule applies to such cases, this Court explained:

> The common-law setoff rule is based on the principle that a plaintiff is only entitled to one full recovery for the same injury.  An injured party has the right to pursue multiple tortfeasors jointly and severally and recover separate judgments; however, a single injury can lead to only a single compensation.
>
> . . . Allowing plaintiff to recover the entire verdict against Allen [vehicle owner] and to retain all the proceeds from the settlement with [the vehicle's operator] would allow the plaintiff to recover four times more than the jury determined plaintiff should be awarded for his injuries.  The Legislature did not intend that a plaintiff be awarded damages greater than the actual loss in vicarious-liability cases, resulting in a double recovery.  The common-law setoff rule should be applied to ensure that a plaintiff only recovers those damages to which he or she is entitled as compensation for the whole injury. . . .
>
> *  *  *
>
> To the extent that joint and several liability principles have not been abrogated by statute, they remain intact, and the common-law setoff rule remains the law in Michigan with regard to vehicle-owner vicarious-liability cases.[9]

---

[8] See, for example, MCL 600.2956, which retains vicarious liability for employers, and MCL 257.401(1), which retains vicarious liability for vehicle owners.

[9] *Kaiser*, 480 Mich at 39-40 (citation omitted).

3

Thus, *Kaiser* recognized that when a party suffers a single, indivisible injury as the result of the conduct of multiple tortfeasors, the injured party is entitled to be made whole. This means that the injured party is entitled to be fully compensated, but not overcompensated. I see no reason why the principles set forth in *Kaiser* should not be extended to the category of medical malpractice claims that also retain joint and several liability.[10]

Moreover, I believe that in *Markley v Oak Health Care Investors of Coldwater, Inc*, 255 Mich App 245, 256-257; 660 NW2d 344 (2003), the Court of Appeals correctly reasoned that

> [w]ith tort reform and the switch to several liability, it is logical to conclude that common-law setoff in joint and several liability cases remained the law . . . where application of the common-law rule does not conflict with any current statutes concerning tort law, and where a plaintiff is conceivably overcompensated for its injury should the rule not be applied.

Thus, *Markley* correctly held that in medical malpractice cases that retain joint and several liability, the common-law setoff rule applies. However, with that said, if the common-law setoff rule is to be imposed in the absence of statutory authority, it must be applied in the same manner and for the same purpose as it was at common law. Otherwise, the common-law setoff rule is not being applied; instead, an entirely new rule is created.

---

[10] Medical malpractice claims are bifurcated into two categories on the basis of whether the plaintiff is comparatively negligent. Under MCL 600.6304(6)(b), when a plaintiff is comparatively negligent, joint and several liability has been abolished, and the defendants' liability is several. When a plaintiff is not comparatively negligent, joint and several liability is imposed under MCL 600.6304(6)(a).

The undisputed historical purpose of the common-law setoff rule was to preclude a plaintiff from being overcompensated for a single, indivisible injury.[11] That is its only goal. The common-law setoff rule accomplished this goal by subtracting any settlement amount for that injury from the trier of fact's determination of the *entire* amount of the injured party's damages. When applying the common-law setoff rule to medical malpractice cases under the current statutory scheme, the goal of preventing overcompensation remains the same.

In analyzing whether a medical malpractice plaintiff has been overcompensated, we must be mindful of the so-called "tort reform" liability statutes that contain measures to preclude a plaintiff from receiving overcompensation in many regards. For example, the fact-finder is required to separate all economic damages from noneconomic ones,[12] with future damages itemized on a year-by-year basis[13] and any future damages reduced to present cash value.[14] Economic damages are subject to statutory setoff for payments made by a collateral source.[15] Payment for future damages exceeding $250,000 may be satisfied by the purchase of an annuity contract.[16] Noneconomic damages awarded at

---

[11] *Kaiser*, 480 Mich at 39-40.

[12] MCL 600.6305(1)(a) and (b).

[13] MCL 600.6305(1)(b).

[14] MCL 600.6306(1)(c).

[15] MCL 600.6303.

[16] MCL 600.6307.

trial are subject to two different limitations based on the nature of the injury.[17] Each of these measures serves to reduce the amount that an injured party may ultimately receive in a judgment entered as a result of a verdict rendered in his or her favor. These measures greatly reduce the possibility that a medical malpractice plaintiff can be overcompensated.

To determine whether a medical malpractice plaintiff has actually been overcompensated, a multistep analysis is required that considers all the principles discussed above. The first step is to consider whether the plaintiff was comparatively negligent. If the plaintiff was comparatively negligent, a defendant's liability is several and, as such, the defendant is only responsible for his or her pro rata share of the plaintiff's damages.[18] In these instances, the issue of setoff is irrelevant because there is no possibility of the plaintiff being overcompensated. On the other hand, if the jury determines that the plaintiff was not comparatively negligent, the court must determine whether the plaintiff is being overcompensated and, if so, the common-law setoff rule is applicable. In these instances, after a verdict has been rendered, any settlement amounts paid for damages arising from that single, indivisible injury must be set off in the same manner and for the same purpose as at common law—to prevent overcompensation. Thus, settlement amounts should be subtracted from the amount that the trier of fact

---

[17] MCL 600.1483.

[18] MCL 600.6304(6)(b).

6

determines is the full amount that the plaintiff is entitled to recover so that the plaintiff is made whole, but not overcompensated.[19]

The majority opines that the verdict must first be reduced by the applicable limitation on noneconomic damages;[20] then, only *after* the verdict is reduced to that amount, is any settlement set off or subtracted from the reduced award. Additionally, under the majority's analysis, the entire amount of the settlement proceeds must be set off from the noneconomic-damages portion of the plaintiff's adjusted net verdict, without any consideration of whether all the settlement proceeds were intended to compensate the plaintiff for noneconomic damages. I disagree with this analysis.

The majority applies setoff in a manner that is at odds with the common-law rule, which was used to prevent a plaintiff from receiving a double recovery or overcompensation for a single, indivisible injury. The majority seemingly disregards the obvious—the trier of fact determines the total amount of a plaintiff's damages, and only when a plaintiff receives more than that amount as compensation is the plaintiff overcompensated. A plaintiff is not overcompensated when he or she receives less than the trier of fact's determination of the amount that is required to make him or her whole. The goal of the common-law setoff rule is merely to prevent overcompensation; it is not to further undercompensate the plaintiff. Unfortunately, the majority's method of

---

[19] As will be discussed, MCL 600.6305 requires damages to be separated into economic and noneconomic damages and, accordingly, only amounts paid for like damages should be set off.

[20] The limitations on damages contained in MCL 600.1483 are commonly referred to as "caps" on noneconomic damages.

7

applying this rule fails to achieve the goal of common-law setoff. While the majority asserts that it is applying "common-law setoff," it instead creates a new rule that bears little resemblance to the common-law setoff rule or its underlying purpose. It is axiomatic that if a common-law rule is to be used, it should be applied in the manner and for the purposes that it was intended at common law. To do otherwise defies logic and does nothing more than judicially create a new rule in order to fill what the creator of the new rule perceives to be a statutory void.

The majority counters that its manner of applying the common-law setoff rule is mandated by the language of MCL 600.1483(1), which sets forth the limitations on damages.[21] The majority claims that the limitations in this subsection preclude any

---

[21] The full text of MCL 600.1483 provides:

> (1) In an action for damages alleging medical malpractice by or against a person or party, the total amount of damages for noneconomic loss recoverable by all plaintiffs, resulting from the negligence of all defendants, shall not exceed $280,000.00 unless, as the result of the negligence of 1 or more of the defendants, 1 or more of the following exceptions apply as determined by the court pursuant to [MCL 600.6304], in which case damages for noneconomic loss shall not exceed $500,000.00:
>
> (a) The plaintiff is hemiplegic, paraplegic, or quadriplegic resulting in a total permanent functional loss of 1 or more limbs caused by 1 or more of the following:
>
> (*i*) Injury to the brain.
>
> (*ii*) Injury to the spinal cord.
>
> (b) The plaintiff has permanently impaired cognitive capacity rendering him or her incapable of making independent, responsible life decisions and permanently incapable of independently performing the activities of normal, daily living.

8

recovery above that amount regardless of whether an award of damages by a trier of fact is involved. I disagree. The majority reaches its conclusion by myopically focusing on a few selected words of MCL 600.1483(1), rather than the entirety of that subsection, and then adds language to that subsection that does not exist. It argues that because MCL 600.1483(1) uses the terms "total amount," "recoverable," and "shall not exceed," recoverable noneconomic losses "necessarily include[] recovery through settlements, jury verdicts, or arbitration."[22] However, contrary to the majority's position, subsection (1) makes no reference to settlements at all. Moreover, when MCL 600.1483 is read as a whole and in conjunction with MCL 600.6304, as was intended, it is clear from the text

---

      (c) There has been permanent loss of or damage to a reproductive organ resulting in the inability to procreate.

      (2) In awarding damages in an action alleging medical malpractice, the trier of fact shall itemize damages into damages for economic loss and damages for noneconomic loss.

      (3) As used in this section, "noneconomic loss" means damages or loss due to pain, suffering, inconvenience, physical impairment, physical disfigurement, or other noneconomic loss.

      (4) The state treasurer shall adjust the limitation on damages for noneconomic loss set forth in subsection (1) by an amount determined by the state treasurer at the end of each calendar year to reflect the cumulative annual percentage change in the consumer price index. As used in this subsection, "consumer price index" means the most comprehensive index of consumer prices available for this state from the bureau of labor statistics of the United States department of labor.

[22] *Ante* at 14.

of those sections that the limitations on damages are only intended to be applied to awards of damages, not settlements.

The majority's analysis ignores the full language of MCL 600.1483(2), which requires the "trier of fact" to segregate the economic and noneconomic elements of damages. This language logically means that only awards by a trier of fact are within the scope of the subsection, not settlements, which do not involve a trier of fact. More importantly, MCL 600.6304(5) mandates that only following an "award of damages" is the court to reduce that "award" of noneconomic damages to the appropriate limitation found in MCL 600.1483. MCL 600.6304(5) provides:

> In an action alleging medical malpractice, the court shall reduce an award of damages in excess of 1 of the limitations set forth in section 1483 to the amount of the appropriate limitation set forth in section 1483. The jury shall not be advised by the court or by counsel for either party of the limitations set forth in section 1483 or any other provision of section 1483.

However, no comparable language can be found allowing a court to reduce awards by the amount of a *settlement*. Thus, two logical conclusions can be drawn from the actual text of this provision. First, the Legislature did not intend to preclude a trier of fact from determining the full amount of recovery that is necessary to make the plaintiff whole and, second, the Legislature only intended awards by a trier of fact to be reduced to the noneconomic-damages limitation. If the Legislature had intended the interpretation adopted by the majority, it would be logical to assume that it would have made some reference to settlement somewhere in the statutory scheme. Instead, the statutory scheme is *silent* with respect to settlements. While the absence of such language does not preclude common-law setoff, the common-law setoff rule is only applicable when

10

overcompensation is involved. When there is no overcompensation, the common-law setoff rule does not apply. In the absence of statutory authority, and in situations where the common-law setoff rule does not apply, there is simply no basis to apply the reduction in the manner that the majority requires.

In this case, a jury determined that as a result of defendant Dr. Tuma's negligence, plaintiff Ms. Velez's left leg had to be amputated. The jury found that defendant was both professionally negligent and the proximate cause of plaintiff's injuries. The jury returned a verdict in plaintiff's favor that included $124,831.86 in economic damages and $1.4 million in noneconomic damages for a total verdict of $1,524,831. It is the total verdict that constitutes full recovery and makes plaintiff whole. Only if she receives more than this total amount would she be receiving a double recovery or overcompensation. Plaintiff is clearly not receiving a double recovery or overcompensation because the trial court reduced the amount the jury determined would make her whole to $394,200.[23] The trial court reached this judgment amount by first subtracting the settling codefendants' payment to plaintiff ($195,000) from the jury's total verdict ($1,524,831) and then reducing the net verdict ($1,329,831) to the amount required under MCL 600.6303 (in this instance, the noneconomic-damages limitation was

---

[23] The jury verdict included a total of $124,831.86 in economic damages and a total of $1,400,000 in noneconomic damages. Economic damages were reduced pursuant to MCL 600.6304(3) to zero, because all economic damages had been paid by a collateral source. Noneconomic damages were reduced pursuant to MCL 600.6304(5) to the amount of the applicable limitation on damages, which at the time was $394,200. The final judgment totaled $649,655.59, which included the reduced verdict in the amount of $394,200, as well as $43,000 in taxable costs, $105,812.50 for attorney fees, and $106,643.09 in statutory interest covering the period up to the date of the judgment.

11

$394,200).  The Court of Appeals affirmed this equation.  I agree with the trial court and the Court of Appeals, and the majority errs by failing to take this approach.  Rather than applying the common-law setoff rule, the majority creates a new rule and simply calls it "common-law setoff."  I cannot agree with this approach.

My final concern regarding the majority's decision is that it concludes that the entire amount of plaintiff's prior settlement with Tuma's codefendants must be set off or subtracted from plaintiff's noneconomic-damages award.  I find this action considerably troubling because it ignores the actual agreement of the settling parties.  The settlement agreement between plaintiff and the settling codefendants is contained in a document entitled "Covenant Not to Sue Agreement."  The total settlement amount was $195,000, and the agreement specifically states the settlement is for *all* the damages including economic, noneconomic, costs, attorney fees, and interest.  This settlement was intended to resolve *all* of plaintiff's claims with the settling codefendants.  Pursuant to the unambiguous terms of the agreement, the amount of $195,000 was not allocated into any specific category of damages.  As such, there is no logical way to conclude that *all* the settlement proceeds were for noneconomic damages.  Despite this, the majority ignores the terms of the agreement and instead assumes that the entire settlement was for noneconomic damages that are limited by the noneconomic-damages limitation contained

in MCL 600.1483. Because an agreement between the parties is a contract, the majority

is not free to alter its unambiguous terms by making such an assumption.[24]

    For all the foregoing reasons, I respectfully dissent.


                                        Diane M. Hathaway

---

[24] *Grosse Pointe Park v Mich Muni Liability & Prop Pool*, 473 Mich 188, 198; 702 NW2d 106 (2005); *Lintern v Mich Mut Liability Co*, 328 Mich 1, 4; 43 NW2d 42 (1950).